TOMLINSON & CO. (INC.) *v.* H. M. MORGAN.

(Filed 23 September, 1914.)

1. Contracts—Vendor and Vendee—Warranty.

An affirmation of a material fact made by the seller of goods at the time of the sale as an inducement thereto, and accepted and relied on by the buyer, will amount to a warranty.

2. Same—Breach—Fertilizer—Damage to Crops.

A loss suffered by a purchaser of fertilizer in diminution of a given crop, when it is clearly attributable to a definite breach

of warranty, as to its quality, made by the seller, at the time of sale and which induced the purchaser to buy it, is within the contemplation of the parties, and when the damages to crop by reason of its use are capable of being ascertained with a reasonable degree of certainty, they may be recovered.

3. **Same—Tobacco—Evidence.**

In this action to recover the purchase price of certain fertilizers sold and delivered, the defendant set up as counterclaim damages arising from a breach of warranty in the contract of sale; and there was evidence tending to show that the plaintiff had represented the fertilizer to be a certain high-grade brand especially adapted to tobacco, for which the defendant desired it; that the defendant used it upon proper soil for the purpose, and had properly planted and cultivated the crop, and there was a marked diminution of the value of the crop owing to lack of manure; and further, when a member of plaintiff's firm was asked to examine the crop, he said he wished to look no further, for he thought the factory had made a mistake in the use of acid for phosphate. *Held*, evidence sufficient to sustain a verdict awarding damages to the crop arising from the breach of plaintiff's warranty of the quality of fertilizer sold.

4. **Fertilizers—Damage to Crop—Arbitrary Amount—Interpretation of Statutes.**

Rev., sec. 3949, amended by ch. 96, sec. 2, Laws 1911, appearing in Pell's Supplement, p. 239, was enacted as a police regulation to compel manufacturers of fertilizer to keep their goods to the reputed grade, and its provisions do not and were not intended to interfere with the rights and remedies of parties as stipulated and provided for in their personal dealings, so as to fix the damages at an arbitrary amount where the quality of the fertilizer is not as represented, and a recovery is permitted.

APPEAL by plaintiff from *Justice, J.*, at February Term, 1914, of WILSON.

Civil action to recover the contract price of certain fertilizers sold by plaintiff to defendant in 1907 for use on defendant's farm for that year and to foreclose a mortgage on certain personal property to secure the debt.

Defendant, admitting the amount and the execution of mortgage, set up a counterclaim and offered evidence tending to show that the guano in question was sold by plaintiff to defendant in

1907 for use on defendant's tobacco crop for that year, and was so sold to defendant as "Dunnington Special," a high-grade fertilizer, specially suited to tobacco and known as "8-3-3 goods"; that defendant used good plants and same were properly put in and worked, and there was a marked diminution of his crop, arising from lack of proper manure; that the guano sold to defendant under said representation was off grade or improperly mixed; that defendant's crop for that year was thereby seriously injured, and that the amount of damage done, attributable to this default, was from $400 to $500, etc.

Omitting the issues as to value of property secured by the mortgage, which are irrelevant to any question presented, the jury rendered verdict on the claim and counterclaim as follows:

1. Is the defendant indebted unto the plaintiff, and if so, in what amount?   Answer: "Yes; $274.55."   (Answered by the court by consent.)

4. Did the plaintiffs contract to sell to the defendant a fertilizer suitable for the cultivation of tobacco?   Answer: "Yes." (Answered by the court by consent.)

5. Was the guano sold by the plaintiff to the defendant suitable for the growth of tobacco?   Answer: "No."

6. Did the guano so sold contain the percentage of phosphoric acid and potash as represented?   Answer: "No."

7. Was the defendant damaged by the use of said fertilizer, and if so, in what amount?   Answer: "$187.50."

There was judgment for plaintiff for amount of debt, less the counterclaim, and plaintiff, having duly excepted, appealed.

*H. G. Connor, Jr., and W. A. Finch for plaintiff.*
*No counsel contra.*

HOKE, J.   In *Wren v. Morgan,* 148 N. C., pp. 101 and 104, the Court said: "It is accepted law that, to hold a bargainor in a sale responsible for a warranty, it is not necessary that this should be given in express terms, but that an affirmation of a material fact, made by the seller at the time of the sale and as an inducement thereto and accepted and relied on by the buyer, will amount to a warranty," citing Tiffany on Sales, p. 162;

*McKimmon v. McIntosh,* 98 N. C., 89, and *Horton v. Greene,* 66 N. C., 596; and the Court further quoted from the opinion of *Davis, J.,* in *McKimmon v. McIntosh,* as follows: "If the vendor represents an article as possessing a value which, upon proof, it does not possess, he is liable, as on a warranty, express or implied, although he may not have known such an affirmation to be false, if such representation was intended, not as a mere expression of opinion, but the positive assertion of a fact, upon which the purchaser acts; and this is a question for the jury," citing *Thompson v. Tate,* 5 N. C., 97; *Inge v. Bond,* 10 N. C., 101; *Foggart v. Blackweller,* 26 N. C., 238; *Bell v. Jeffrey,* 35 N. C., 356; *Henson v. King,* 48 N. C., 419; *Lewis v. Rountree,* 78 N. C., 323; *Baum v. Stevens,* 24 N. C., 411"; and in *Reiger v. Worth,* 130 N. C., 268, it was held that a purchase of rice under the assurance that it was excellent seed rice amounted to a warranty.

Applying the principles sustained by these authorities and others of like import, the verdict of the jury on the fifth issue, taken in connection with the pleading and evidence, establishes a warranty, made by plaintiff, that the guano sold in this instance, known as Dunnington Special, was a high-grade fertilizer, known as 8-3-3 goods and specially suitable for tobacco. There is nothing in the case of *Woodbridge v. Brown,* 149 N. C., 299, that in any way militates against this position. In that case the record shows that the breach of warranty, as a counterclaim, was expressly withdrawn, nor does it appear that there was any assertion of a material fact relied on as an inducement to the sale.

The Court does not understand that plaintiff seriously contends that a warranty has not been established by the verdict, but it is chiefly urged for error that there is no proper evidence tending to show a breach of the warranty, *i. e.,* that the guano sold was off grade, and, second, that, under our decisions, a loss claimed in diminution of the crop is too remote and uncertain to be made the basis for an award of damages.

Undoubtedly, a counterclaim of this character presents such an inviting field for litigation and is so liable to abuse that it

should not be entertained unless it is clearly established that there has been a definite breach of the warranty, and satisfactory evidence is offered that the loss claimed is directly attributable to the breach, and the amount can be ascertained with a reasonable degree of certainty. While the Court should always be careful to see that these rules are not transgressed to the injury of a litigant, when the facts in evidence clearly meet the requirements, authority in this State is to the effect that the loss suffered in diminution of a given crop, when it is clearly attributable to a definite breach of warranty as to the quality of a fertilizer, that it is within the contemplation of the parties and capable of being ascertained with a reasonable degree of certainty, may be made the basis for an award of damages. *Herring v. Armwood,* 130 N. C., 177; *Spencer v. Hamilton,* 113 N. C., 49.

In *Spencer v. Hamilton, supra,* an action to recover rent, the tenant set up by way of counterclaim a breach of contract on the part of the landlord to have certain ditches cleaned out, and by reason of the failure the land was flooded and the crop lessened. Evidence as to the effect such failure had upon the crop and to what extent it was damaged thereby was competent as affording a basis to the jury for the measurement of damages sustained by defendant for the breach of the contract, and further: "That in such case the true measure of damages is not what it would have cost the defendant himself to clear out the ditches, but his loss "by having to work an undrained instead of a drained farm," and the present *Chief Justice,* delivering the opinion, said: "This case is easily distinguishable from *Foard v. R. R.,* 53 N. C., 235; *Ashe v. DeRosset, ibid.,* 240; *Boyle v. Reeder,* 23 N. C., 607, and *Sledge v. Reid,* 73 N. C., 440, and similar cases, in that in those cases the damage was incidental and unforeseen, or merely vague, uncertain, and conjectural. And in this they are immediate, necessary, and reasonably certain, and such as were in contemplation of the parties to the contract"; and in *Herring's case* it was held, directly, that "Damages resulting from failure of a landlord to furnish fertilizer to his tenant are not too remote for consideration."

166—36

In the present case there was testimony on the part of defendant tending to show that defendant bought the fertilizer of plaintiff for use in his tobacco crop for the year 1907, under a statement and representations that it was a high-grade fertilizer specially suited for tobacco; that it was properly applied on 10 acres of land cultivated by defendant in tobacco and suitable for that purpose; that the plants were good, properly put in and worked, and there was a marked loss in diminution of the crop, owing to lack of manure; and, further, that when a member of plaintiff's firm was asked to examine the condition of the crop, he replied: "That he had seen as much as he wanted to see, and that he thought there must have been a mistake in the factory, putting acid instead of phosphate." These facts concurring, if accepted, bring the case within the principle adverted to and justify the court and jury in upholding the counterclaim of defendant.

In *Carson v. Bunting,* 154 N. C., 530, a case much relied on by defendant, the damages were restricted to the difference between the actual and contract value, and this on the express ground that the "damages were discovered in time to have procured other fertilizer, and that the purchaser could have obtained the same."

In *Fertilizer Co. v. McLawhorn,* 158 N. C., 274, the principle of the *Carson case* was again applied, and the decision was also in part made to rest on the fact that the claimant as *del credere* agent of the plaintiff had sold the guano in different quantities to various purchasers, and the facts presented were not sufficiently definite and certain to permit the award of damages on the basis of a diminution in the crop; and in *Ober v. Katzenstein,* 160 N. C., 439, it again appeared that the suit was between a dealer in fertilizers and his agent, and *McLawhorn* and *Buntaing's cases* were followed, chiefly for the reason referred to, and in the opinion delivered by the *Chief Justice,* p. 441, it may be well to note that the cases of *Herring v. Armwood, supra,* and *Spencer v. Hamilton, supra,* are recognized as having been correctly decided.

In *Sledge v. Reid,* 73 N. C., 440, the suit was to recover the value of a mule seized by defendant under process and wrongfully converted to his own use. In seeking to recover additional damage for the loss of crop caused by defendant's wrong, recovery was denied on the ground that such a demand, being for consequential damages, was too remote, the facts failing to show but that plaintiff could have had another mule, and thus avoided this specific loss.

It was further contended that, in section 3949 of Revisal, as it now appears in Pell's Supplement, p. 239, being chapter 96, sec. 2, Laws 1911, the Legislature had fixed the damages at an arbitrary amount, as it there appears; but a perusal of the statute will disclose that it was enacted as a police regulation to compel the manufacturers of fertilizers to keep their goods to the reputed grade, and that its provisions do not and were not intended to interfere with the rights and remedies of parties as stipulated and provided for in their private and personal dealings.

On careful consideration of the record, we are of opinion that no reversible error appears, and the judgment on the verdict is affirmed.

No error.