J. W. CARTER v. W. E. McGILL.

(Filed 31 March, 1915.)

1. **Vendor and Purchaser — Fertilizers—Breach of Warranty—Effect Upon Crop—Trials—Evidence.**

A breach of warranty in the sale of fertilizers to be used by the purchaser in the cultivation of his crop may be shown by evidence that the crop was not beneficially affected by its use, provided a proper foundation for its admission is first laid by evidence tending to show that the land was adapted to the growth of the contemplated product, had been properly cultivated and tilled, with propitious weather or seasons, so as to exclude any element which would render the evidence uncertain as to the cause of the loss or the diminution of the crop, and rid it of its speculative character.

**2. Same—Chemical Analysis—Appeal and Error.**

In an action on breach of warranty of grade in the sale of fertilizer to a consumer, a chemical analysis of the fertilizer is not the indispensable, though, perhaps, the better test, and it is reversible error for the trial judge tó exclude an answer to a question, when it is stated by the attorney for the appellant that he would show by this and other witnesses that the fertilizer was worthless; and his further statement, "that it had no beneficial effect on the crop," was merely a logical deduction to be made from its worthless character.

**3. Vendor and Purchaser—Fertilizer—Breach of Warranty—Damages—Penalty of Statutes.**

A user of fertilizer is not deprived of his right to recover general damages for a breach of warranty of its grade by Revisal, sec. 3945, which penalizes the violation of its provisions.

**4. Vendor and Purchaser—Breach of Warranty—Counterclaim—Issues.**

On a trial to recover the purchase price of fertilizer sold to a user thereof, where a counterclaim is set up seeking damages for a breach of warranty, separate issues should be submitted, and the issue of damages should exclusively relate to that subject.

APPEAL by defendant from *Cooke, J.,* at September Term, 1914, of CUMBERLAND.

This action was brought to recover the amount due upon a note and agricultural lien given for advances in supplies and so forth, to be made to defendant by the plaintiff in 1912, and to be used in the cultivation of his farm of 172 acres in said county. Plaintiff alleged, and there was testimony to show, that the balance due for supplies furnished by him, after proper deduction for payments, was $1,388.62. Defendant set up a counterclaim, alleging therein that he had paid for all supplies except certain fertilizers, which were furnished by plaintiff with a special representation, upon which he relied and which induced him to purchase the same, that they would be of standard grade, containing certain chemical ingredients, and that this contract of warranty was broken by plaintiff, entailing damage to the defendant in the loss or diminution of his crop and injury to his land in the sum of $6,000.

The defendant tendered an issue in these words: "Did the fertilizer furnished by the plaintiff to the defendant come up to the standard grade?"

The court submitted these issues:

1. In what amount, if anything, is the defendant indebted to the plaintiff for wares, goods, and merchandise sold by the plaintiff to the defendant under the lien and mortgage described in the complaint?

2. What was the value of the property seized by the sheriff in the claim and delivery herein, at the time of the seizure?

3. In what amount, if anything, is the plaintiff indebted to the de- fendant on account of the counterclaim set up in the defendant's answer?"

The court charged the jury to answer the first "$1,388.62," the second issue as they might find the value of the property to be, seized by the sheriff, and the third "Nothing," and the jury rendered their verdict accordingly, answering the second issue "$663.12."

The plaintiff's witness, P. S. Stead, who was salesman for the plaintiff, testified to an additional representation in the sale of the fertilizer, as follows: "I told him that the fertilizer was all right; that it was good guano for cotton or for anything. I do not remember that he asked me if it was good for corn. I am certain that I told him it was good for cotton. I do not know whether he bought it on my recommendation or not, but he did buy it." But no notice is taken of this fact, if it be a fact, in the complaint.

Defendant's witness, John Campbell, testified: "I used some of the 8-3-3 fertilizer in 1912, which I obtained from Mr. McGill. I used it on some corn. It had no effect on my corn. I used about 600 pounds, three sacks to the acre. The crop was properly cultivated. The land was good for either cotton or corn. I got the fertilizer from Mr. McGill."

Defendant also proved by other witnesses that they used the fertilizers on their lands in the same neighborhood, and then proposed to prove what were the results, but was stopped by plaintiff's objections. The questions were ruled out. He also proved that some of the fertilizer was "dumped into a field," and proposed to show what effect it had upon the land, but this question was also excluded. He finally proposed to show by several witnesses (naming them) that they used the same fertilizer, "and that it was *worthless* and had no beneficial results upon the crops where it was used." This was excluded upon objection by plaintiff.

There was certain evidence as to the rules and practice of the Department of Agriculture in making analyses of fertilizers, which appears to be incompetent, but is not material, in the view taken of the case by the Court. There was judgment upon the verdict, and the defendant appealed and assigned errors.

*McIntyre, Lawrence & Proctor for plaintiff.*
*Rose & Rose for defendant.*

WALKER, J., after stating the case: This case is not exactly like any other one we have had before us upon this and kindred subjects. The only question we will discuss in this appeal is whether the defendant offered any competent evidence of a breach of the warranty that the fertilizer should be of "the standard grade," and we think he did. It may not have been very full or explicit, but we cannot say that there was no evidence. It is not necessary, in order to prove this fact, that there should be a chemical analysis of the fertilizer. This is, perhaps,

the best way of establishing the fact, but not the only one. The purchaser of the fertilizer may show a breach by the effect of the use of it upon his crops, provided he first lays the foundation for such proof by showing that it was used under conditions favorable to a correct test of its value, such as land adapted to the growth of the cotton, proper cultivation and tillage, propitious weather or seasons, the general purpose being to exclude any element which would render the evidence uncertain as to the cause of the loss or diminution of the crop or rid it of its speculative character. It may be somewhat difficult in practice to apply the rule, but it can be done by proper attention to the limitations on this kind of evidence, and we have so held in *Guano Co. v. Live-stock Co., ante,* 442. We have allowed somewhat similar evidence to be considered in the case of flooding lands. *Spencer v. Hamilton,* 113 N. C., 49; and this Court, in *Herring v. Armwood,* 130 N. C., 177, recognized that such evidence might be stripped of its conjectural features and made available as legal proof of the fact that the loss or diminution of crops, in such circumstances, was directly, certainly, and solely traceable to the lack of a fertilizer, and, for the same reason, to its worthlessness. It is not unlike the opinion of an expert, which, if not founded upon a knowledge or finding of the facts to which it relates, is of no value, and those facts must be such as are material to the inquiry, and not uncertain or conjectural. We know by experience that a fertilizer of standard quality will produce good results by stimulating the growth of the plant under favorable conditions, but that in order to determine whether a failure in results is attributable to its bad quality, or to its being below such grade, the purely speculative elements or quantities in the calculation must be excluded, so as to bring the test to the standard of reasonable certainty. There must be some evidence by which the jury can reason from cause to effect, disregarding those matters which necessarily involve the matter in doubt, and prevent a reliable conclusion. If the fertilizer, therefore, is used under conditions and circumstances favoring an increased yield in the crop, provided it is of the warranted grade, and yet the results are not such as should have been expected, there is some evidence that it was of a defective quality and not up to grade. *Herring v. Armwood, supra.*

In this case defendant offered to prove that the fertilizer was "worthless," and should have been permitted to do so, if he could. The tender of the proof was a broad one, that the fertilizer was worthless, and the addition, "that it had no beneficial results upon the crops," was merely a logical deduction to be made from its worthless character. If it was worthless, this was certainly some evidence that it was "off grade." *Tomlinson v. Morgan,* 166 N. C., 557; *Guano Co. v. Live-stock Co., supra.* The seller and the buyer of fertilizers can protect themselves by proper

warranties, at the time of the purchase, if they see fit to do so. The seller may restrict it, while the buyer may require that it be enlarged, according as their interests may dictate. Unless they do so, they must abide by the contract as made by them. We need not consider the question as to the measure of defendant's damages, if he is entitled to any, as that matter is not before us. There was a warranty here and evidence as to its breach, which should have been submitted to the jury, under proper instructions.

If the question of damages comes before us, the cases of *Spencer v. Hamilton,* 113 N. C., 49, and *Herring v. Armwood,* 130 N. C., 177, may have an important bearing. The Revisal, sec. 3945 *et seq.,* which penalizes the violation of its provisions, does not deprive the buyer of his right to general damages for a breach of warranty. *Tomlinson v. Morgan, supra.*

The question here, as to the competency of the evidence, was not presented in *Fertilizer Works v. McLawhorn,* 158 N. C., 274; *Ober v. Katzenstein,* 160 N. C., 439, or *Carson v. Bunting,* 154 N. C., 530. The first two cases were between the manufacturer and the dealer, and the last was an action for the penalty for not branding, and in other respects involved a different question. In the *McLawhorn case,* so far as the question may have been mentioned, the evidence was clearly speculative.

The defendant was entitled to have an issue submitted upon his counterclaim, so that the jury might find specifically whether or not there was a warranty and a breach thereof. A cause of action or defense should not be tried upon the issue as to damages merely, where objection is made, but a separate issue should be submitted and the issue as to damages left to embrace that subject alone. *Denmark v. R. R.,* 107 N. C., 185; *Davis v. R. R.,* 147 N. C., 68.

New trial.