ARMOUR FERTILIZER WORKS v. W. H. AIKEN.

(Filed 17 April, 1918.)

1. **Contract—Vendor and Purchaser—Express Warranty—Implied Warranty.**

Subject to a few recognized exceptions, an express warranty in an executed contract of sale will exclude one that is ordinarily implied where the two are of the same general nature or refer to the same or closely related subjects or qualities in the thing sold.

2. **Fertilizers — Vendor and Purchaser — Contracts — Express Warranty — Analysis—Crops—Damages.**

An express warranty in the written contract of sale of commercial fertilizers guaranteeing a specified analysis, but not as to the result on the crops in which it is to be used, will protect the manufacturer or seller from the warranty ordinarily implied, that the fertilizer is fitted for the contemplated purpose.

3. **Same—Pleadings—Demurrer.**

Where the maker of notes given for commercial fertilizer therein waives all claims, damages and penalties in case of deficiency, except claim for the actual commercial value of deficiency when ascertained and determined by the State Chemist from samples taken in the presence of the seller or his authorized representative, the stipulation as to the waiver is a reasonable and valid one and excludes any and all evidence as to the effect of the fertilizer upon the crops upon the question of damages; and where there is no allegation in the pleading that the specified method has been employed, a demurrer is good.

**4. Same—Statutes—Waiver.**

Chapter 143, Laws of 1917, repealing sections 3945-3956 of the Revisal, provides adequate and sufficient means and facilities for the analysis of fertilizers by the State Chemist, under conditions safeguarding both the seller and buyer thereof, and provides that no suit shall be brought for damages resulting in their use except after chemical analysis showing deficiency of ingredients, etc., with further provision allowing either party to make further agreement for their reasonable and lawful protection: *Held*, a waiver by the purchaser of any demand for damages, except such as may be ascertained in the manner specified in the statute, is valid and enforcible under the present law.

**5. Courts — Jurisdiction — Municipal Courts—Superior Courts—Pleadings—Demurrer.**

A counterclaim, strictly as such, and not by way of defense, may not be set up in excess of the jurisdictional amount of a municipal court in which the action is properly brought; and a demurrer in the Superior Court on appeal which has only derivative jurisdiction is good.

CIVIL ACTION, heard on appeal from the City Court of Raleigh and on demurrer of plaintiff to defendant's counterclaim and further defense before *Lyon, J.*, at October Term, 1917, of WAKE.

The action was instituted in the City Court and was to recover the amount of a promissory note for $458.04, bearing date 1 May, 1916, and due on or before 1 October, 1916. After the direct promise to pay the amount of said note and interest, the same proceeded as follows:

The consideration of this note is:

    100 sacks 8-3-2 .. . . . . . . .    ............sacks............
     40 sacks cotton-seed meal, 7½ cents, ............sacks............
      3 sacks nitrate of soda, 18 cents  .  ............sacks............

I hereby acknowledge I have received and used the above fertilizer without any guarantee on the part of Armour Fertilizer Works, or its agents, as to results from its use, and which have been inspected, tagged and branded under and in accordance with the laws of this State; and I hereby waive all claims, damages, and penalties in case of deficiency, except claim for the actual commercial value of deficiency when, and only when, ascertained and determined by the State Chemist from samples taken in the presence of seller, or seller's authorized representative, from fertilizers for which this note is given.

Witness my hand and seal the day and year above written.

                                        W. H. AIKEN   (SEAL)

Plaintiff in his verified complaint alleged the execution of the note in form as stated, and that no part of same had been paid though repeatedly demanded.

Defendant answered, admitting execution of the note, and that no part of same had been paid, and by way of counterclaim and further defense made averment as follows:

For a further defense, the defendant therefore, answering the complaint of the plaintiff, alleges:

"1. That defendant bought from plaintiff 100 sacks of 8-3-2 fertilizer, 40 sacks of cottonseed meal, and 3 sacks of nitrate of soda; that he agreed to pay for said fertilizer the sum of $355, for said cottonseed meal the sum of $79, and for the nitrate of soda the sum of $24.04."

Defendant admits that the cottonseed meal and the nitrate of soda was up to the guaranteed standard, but he alleges that the 100 sacks of fertilizer purchased by him from the plaintiff was utterly worthless; that defendant applied said 100 sacks of fertilizer to his crops in a liberal manner and cultivated said crops in a careful and husband-like manner, but that his crops received absolutely no benefit from said fertilizer.

"2. That by reason of the said fertilizer being worthless and of no account, defendant was damaged in the sum of $855, which amount of $855 defendant specifically pleads as an offset and counter to plaintiff's cause of action. Wherefore defendant demands judgment in the sum of $500, with interest from ........ day of .................... until paid, and the costs of the action to be taxed by the clerk."

Plaintiff demurred to said answer:

"1. For that the further defense alleged was not open to defendant by reason of the express stipulations of the note.

"2. That the City Court of Raleigh had no jurisdiction of the amount of damages as set up and claimed by defendant, to wit, $845."

There was judgment in City Court against defendant for the amount of the note and, on appeal, this judgment was affirmed, the court being of opinion that the demurrer of plaintiff should be sustained on both positions.

*Joseph B. Cheshire, Jr., for plaintiff.*
*W. H. Lyon, Jr., for defendant.*

HOKE, J., after stating the facts: It is the accepted position here and elsewhere that, subject to a few recognized exceptions, an express warranty in an executed contract of sale will exclude one that is ordinarily implied where the two are of the same general nature or refer to the same or closely related subjects or qualities in the thing sold. *Guano Co. v. Live Stock Co.,* 168 N. C., 443; *Piano Co. v. Kennedy,* 152 N. C., 196; *DeWitt v. DeBerry et al.,* 134 U. S., 306, and see an instructive editorial note on the subject in 33 L. R. A. (N. S.), 501, case of *Loxtercamp v. Lineker Implement Co.,* 147 Iowa, 29. And the principle has been ap-

proved and applied in well considered cases to sales of commercial fertilizers wherein it was held that an express warranty guaranteeing a specified analysis, but "not as to results on the crops," would protect the manufacturer or vendor from damages claimed for loss or diminution of crops, because the goods were not fitted for the purpose for which they were bought, this being a warranty ordinarily implied on such contracts. *Carter v. Gill,* 171 N. C., 775; *S. c.,* 168 N. C., 507; *Guano Co. v. Live Stock Co., supra; Germofort v. Cathcart,* 104 S. C., 125; *Allen v. Young,* 62 Ga., 617.

In the North Carolina cases just cited, of *Carter v. Gill,* both opinions written by *Associate Justice Walker,* it was held that, while on a warranty of that kind the vendor was protected from any claim for damages arising from loss of crops, etc., the condition of the crops tending to show that the fertilizer had been of no benefit to them, was admissible when the same was sufficiently definite and specific to be of reasonable aid to the jury in reaching a correct conclusion on the chemical analysis as it was guaranteed by the contract, approving in that respect the general principle applied in *Morgan v. Tomlinson,* 166 N. C., 557, a case however, where an express warranty of fertilizer was established by the verdict.

In this contract it will be noted that the stipulations in protection of the vendor go much beyond those appearing in the cases just referred to, the provision being:

"I hereby acknowledge I have received and used the above fertilizer, without any guarantee on the part of Armour Fertilizer Works or its agents as to results from its use, and which have been inspected, tagged and branded under and in accordance with the laws of this State; and I hereby waive all claims, damages and penalties in case of deficiency, except claim for the actual commercial value of deficiency when, and only when, ascertained and determined by the State Chemist from samples taken in the presence of seller or seller's authorized representative, from fertilizers for which this note is given."

In its terms and purpose it is broad enough to exclude and does exclude any and all evidence as to the effect of the fertilizer on the crops, the agreement being as shown that the purchaser waives all claims except those for the "commercial value of the deficiency" from the stipulated standard, and this only "when ascertained and determined by the State Chemist from samples taken from the fertilizers sold and in the presence of the seller or his authorized agent." We are of opinion that such a stipulation is in every way a reasonable one, well calculated to promote and insure fair and safe dealing in this important matter and not only not opposed to any public policy prevailing with us, but the same is in accord with direct suggestion of this Court in *Carter v. Gill, supra,* and

26—175

fully recognized and approved in our latest legislation on the subject, Laws 1917, ch. 143.

The statute in question, repealing sections 3945 to 3956 of Revisal, inclusive, makes elaborate and minute provision with the view of insuring a correct analysis of these important commodities and in protection both of the manufacturer and vendor and of the purchaser and consumer; directs the employment of sufficient chemists and assistants; provides for an analysis at the instance of the purchaser or by its own agents when necessary; provides, further, that samples for the purpose shall be taken always in the presence of the agent, seller or dealer or some representative of the manufacturers or if none of these can be present or if they refuse to act, then in the presence of two disinterested witnesses, etc. That no suit for damages shall be brought for results in use except after chemical analysis showing deficiency of ingredients unless the dealer has been selling goods that are outlawed by the statute or has offered for sale during the season dishonest or fraudulent goods.

Having thus dealt very fully with the subject, recognizing as sound the principle of selecting the samples in the presence of the manufacturer or dealer, section 7 of the act concludes with the proviso that "nothing in this act shall impair the right of contract," showing the clear intent and purpose of the Legislature to allow to either party the privilege of making further stipulations in reasonable protection of their interests and in accord with established principles of law. In *McLawhorn v. Fertilizer Works*, 158 N. C., 274, opinion by the *Chief Justice*, decided intimation is given that this is the true public policy and the correct interpretation of our former statute on the subject and undoubtedly it should prevail under the present law.

We must all recognize that in these sales of commercial fertilizers, among the most important of our economic life, some such provision as this is essential and necessary to the proper protection of the manufacturer and dealer on the one side and purchaser and consumer on the other, and required to enable them to have any correct estimate of the pecuniary value of such contracts, and the defendant, under a valid agreement, having waived his right to any and all claims for damages except for deficiency in ingredients and then only when such deficiency is ascertained in a specified way, and there being no allegation or claim that the required measures were taken to have a fair analysis made, we must hold that no valid defense has been alleged and, on that ground, the demurrer of plaintiff has been properly sustained.

As to the second ground, the counterclaim, being for $845, is beyond the jurisdiction of the City Court and that of the Superior Court being only derivative, the damages alleged could not be properly insisted on strictly as a counterclaim.

It is allowable, however, to set up and establish the same by way of defense to a smaller demand, for the reason and to the extent set forth in *Cheese Co. v. Pipkin,* 155 N. C., 394, and other cases.

As the demurrer is sustained on the principal ground that the answer, as stated, sets up no valid defense to plaintiff's demand, the judgment of the court below must be affirmed.

Affirmed.