## JONES *v.* UNION GUANO COMPANY, INCORPORATED.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 73. Argued October 15, 1923.—Decided February 18, 1924.

1. In exercising its right to impose reasonable conditions upon the bringing of suits, a State properly may treat as a separate class actions to recover damages resulting to crops from harmful or deficient fertilizers, and require a chemical analysis as a condition precedent, without excluding other evidence. P. 181.

2. A statute of North Carolina (Laws 1917, c. 143,) regulating the sale of fertilizers to prevent deception and fraud, and granting the purchaser new rights and remedies for departures from the standards fixed without depriving him of any right or cause of action

or of liberty to contract with the manufacturer on other terms, provides that no suit for damages from results of the use of fertilizer may be brought except after chemical analysis showing deficiency of ingredients, unless it shall appear to the State Department of Agriculture that during the season the manufacturer has, in other fertilizer offered, employed ingredients outlawed by the act, or offered any kind of dishonest or fraudulent goods. The act provides opportunity for official chemical analysis, limiting, however, the time and manner in which samples for analysis may be taken, and declares that a certificate of the state chemist of an analysis made by him of any sample drawn under these provisions shall be *prima facie* proof that the fertilizer was of the value and constituency shown by such analysis;

In an action to recover damages to a crop alleged to have resulted from fertilizer of inferior quality and containing deleterious ingredients, in which the plaintiff was nonsuited for not having procured a chemical analysis as required by the act, *held,* that the requirement was not arbitrary, but reasonable, and consistent with the due process and equal protection clauses of the Fourteenth Amendment. P. 180.

183 N. C. 338, affirmed.

ERROR to a judgment of the Supreme Court of North Carolina, affirming a judgment of nonsuit in an action to recover damages to a tobacco crop alleged to have resulted from the use of fertilizer, bought from the defendant and alleged to have been inferior in quality and to have contained harmful ingredients.

*Mr. Edward C. Jerome,* with whom *Mr. J. M. Sharp* and *Mr. B. L. Fentress* were on the brief, for plaintiff in error.

The complaint may be treated as alleging two causes of action: first, because defendant wrongfully inserted into the fertilizer a substance harmful to tobacco; second, for failure to put into the fertilizer the ingredients that it was represented to contain, one cause of action being for destruction, the other for failure to help as represented.

The statute, in the absence of the required certificate, abolishes all remedy for damage caused by the insertion of a harmful substance in fertilizer, unless it was done dishonestly or fraudulently, or accompanied by a similar injury to another person.

A " chemical analysis showing a deficiency of ingredients," made a prerequisite to the bringing of this action, has nothing to do with the additional presence of some harmful substance.   This wrong was something that the legislature very evidently did not have in mind in passing the statute, but the Supreme Court of the State has construed the statute as applying to that cause of action.   The only alternatives given to one who has had his crop ruined are absurd.   We must make it " appear " to the Department of Agriculture that the manufacturer in other goods offered in this State during such season, employed such ingredients as are outlawed by the provisions of this article; or he must make it " appear to the Department of Agriculture that the manufacturer of such fertilizer has offered for sale during that season any kind of dishonest or fraudulent goods."   In other words, the one injured, as this plaintiff has been, must find some other person who has a like cause of action against the same defendant, and make that appear to the Department, although by what means the statute does not say.   The Department may ignore the most convincing evidence, and simply announce that it does not appear.   No process is provided for the plaintiff to secure witnesses before the Department, and the Department is not compelled to have a hearing.   As much may be said for the other alternative, requiring it to appear that the fertilizer was " dishonest or fraudulent goods."   This leaves out entirely a cause of action based upon the negligent insertion of a harmful substance in fertilizer, because in such case there might be no deficiency of ingredients, no " other goods offered in this State during such season " by the same

manufacturer, or none that contained outlawed substances, and no dishonesty or fraud. Thus the plaintiff is left entirely without remedy for the damage caused him by the defendant's placing in his fertilizer some substance that practically ruined his tobacco crop.

A State cannot abolish all remedy for an admitted tort. *Truax* v. *Corrigan,* 257 U. S. 312.

There is a denial of equal protection of the law by a statute which denies to one class of persons the right to recover damages from another class for a particular injury, leaving actions identical in principle for the benefit of all other classes. *Atchison, etc. Ry. Co.* v. *Vosburg,* 238 U. S. 56; *Park* v. *Detroit Free Press Co.,* 72 Mich. 560.

The classification, with reference to a tort, of farmers on one side and fertilizer manufacturers on the other, cannot be sustained. *Truax* v. *Corrigan, supra; Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540. The statute requires the farmer to refuse to take the fertilizer manufacturer's word that his fertilizer contains the ingredients in the proper proportion to help the growth of his crops, and to have it analyzed before using it. A person who is compelled to anticipate the commission of a tort upon him, and to comply with conditions precedent to the bringing of an action for a possible wrong before it is consummated, cannot be said to have the equal protection of the law.

The statute deprives plaintiff in error of a property right without due process of law. No statute can make any evidence conclusive. *United States* v. *Klein,* 13 Wall. 128; *Chicago, etc. Ry. Co.* v. *Minnesota,* 134 U. S. 418; *Missouri, etc. Ry. Co.* v. *Simonson,* 64 Kans. 802.

The statute makes the absence of the particular kinds of evidence that it specifies conclusive of the rights of the plaintiff. It prescribes the kind of evidence that may be introduced, without even a pretense of being general. First, a certificate of chemical analysis showing a de-

ficiency of ingredients; but there may be no deficiency of ingredients and at the same time a harmful substance present. Next, that plaintiff has made it appear to the Department that the same defendant has similarly injured some other farmer in the State during the same season; or that the defendant has been dishonest or fraudulent. These three kinds of evidence have nothing to do with the cause of action of the plaintiff. He does not have to prove that the defendant dishonestly or fraudulently put a harmful substance into his fertilizer, but simply that it was there. *Chicago, etc. Ry. Co.* v. *Minnesota,* 134 U. S. 418; *McFarland* v. *American Sugar Refg. Co.,* 241 U. S. 79; *Bailey* v. *Alabama,* 219 U. S. 219; *Reitler* v. *Harris,* 223 U. S. 437; *Mobile, etc. R. R. Co.* v. *Turnipseed,* 219 U. S. 35. The effect is to deprive a party of the right to try his action on the real facts.

The certificate of chemical analysis of this fertilizer, made by the chemist of the State Department of Agriculture, shows that there was a deficiency of the ingredients that the fertilizer was represented to contain. The plaintiff was denied the right to use this certificate as evidence because the sample used for analysis was not drawn from ten bags of the fertilizer; and, because the plaintiff had used the fertilizer for the purpose for which defendant represented it to be good, he was denied the privilege of introducing evidence of any analysis of it. The court below made much of the fact that this plaintiff bought fifty-one bags of the fertilizer and therefore said that he could not question the validity of the provision requiring samples to be drawn from at least ten bags, but that does not answer the contention that it is not due process of law to require the plaintiff, in advance of any injury to him, to provide himself with the " same kind of instruments used by the inspectors of the Department in taking samples," and to draw the samples within thirty days after delivery to him. The statute deprives the

plaintiff of the privilege of making any contract for the purchase of fertilizer that will obviate the necessity of this expense and trouble.

The statute is void because it substitutes the arbitrary discretion of an executive department for the judicial inquiry of the courts. In cases where there is no certificate of chemical analysis showing a deficiency of ingredients, it leaves it absolutely to the Department, in its ungoverned discretion, to say whether there is a cause of action. It thus assigns a judicial function to an executive department without provisions for a hearing or for procuring witnesses. *Yick Wo* v. *Hopkins,* 118 U. S. 356; *State* v. *Tenant,* 110 N. C. 609; *Chicago, etc. Ry. Co.* v. *Minnesota,* 134 U. S. 456.

*Mr. Louis M. Swink* and *Mr. W. M. Hendren,* with whom *Mr. Oscar O. Efird* was on the brief, for defendant in error.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Plaintiff in error brought this action in the Superior Court of Rockingham County to recover damages alleged to have resulted to his tobacco crop from the use of fertilizer manufactured and sold by defendant in error. A state law (§ 7, c. 143, Laws of 1917) provides that no such action shall be brought until after chemical analysis showing the ingredients of the fertilizer. The plaintiff in error failed to meet this requirement, and, notwithstanding evidence tending to show inferior quality of and deleterious ingredients in the fertilizer and injury to the crop resulting from its use, the court dismissed the case and entered judgment of nonsuit. The Supreme Court of the State affirmed the judgment. 183 N. C. 338. The question here is whether the state law so applied is repugnant to the due process clause or equal protection clause of the Fourteenth Amendment.

The facts alleged and on which plaintiff in error seeks to recover are these. In the spring of 1919, he purchased 51 bags of fertilizer upon the representation and warranty of defendant in error that it was good for and conducive to the growth of tobacco. The weather was propitious, the plants were good and properly set out, and the land was properly tilled. The fertilizer contained deleterious ingredients not available as food for plants, and killed or prevented the growth of tobacco. There was produced 4469 pounds of tobacco on which, by reason of inferior quality, there was a loss of thirty cents a pound, $1,340.70; and in addition to the actual yield there should have been produced 5281 pounds of the value of seventy cents per pound, $3,696.70, making total damages alleged $5,037.40.

In North Carolina commercial fertilizer is generally used for the production of crops. Prior to the passage of the act, litigation between the users and sellers of fertilizers involving demands for damages for injuries to crops alleged to have resulted from the use thereof, became a matter of public concern affecting, or liable to affect, the general welfare.[1] In earlier cases, the Supreme Court of the State held the measure of damages to be the difference between the actual value and the purchase price of fertilizer, and denied recovery for diminution of crops on the ground that such a claim necessarily must be speculative. *Fertilizer Works* v. *McLawhorn,* (1912) 158 N. C. 274. Later, recovery for diminution of crops was permitted. *Tomlinson & Co.* v. *Morgan,* (1914) 166 N. C. 557; *Carter* v. *McGill,* (1915) 168 N. C. 507, Rehearing, (1916) 171

---

[1] See *Carson* v. *Bunting,* (1911) 154 N. C. 530; *Fertilizer Works* v. *McLawhorn,* (1912) 158 N. C. 274; *Ober & Sons Co.* v. *Katzenstein,* (1912) 160 N. C. 439; *Tomlinson & Co.* v. *Morgan,* (1914) 166 N. C. 557; *Guano Co.* v. *Live-Stock Co.,* (1915) 168 N. C. 442; *Carter* v. *McGill,* (1915) *id.* 507, Rehearing, (1916) 171 N. C. 775. See also decisions subsequent to its passage: *Fertilizer Works* v. *Aiken,* (1918) 175 N. C. 398; *Fertilizing Co.* v. *Thomas,* (1921) 181 N. C. 274.

N. C. 775. In *Guano Co.* v. *Live-Stock Co.*, (1915) 168 N. C. 442, where the contract of sale of fertilizer contained a warranty that the seller should not be held responsible for results in actual use, the court said (p. 448): "The warranty was drawn for the very purpose of preventing the recovery of such damages as are, in their nature, very speculative, if not imaginary, and out of all proportion to the amount of money or price received by the seller for the fertilizer. If fertilizer companies can be mulcted in damages for the failure of the crop of every farmer who may buy from them, they would very soon be driven into insolvency or be compelled to withdraw from the State, as the aggregate damages, if the supposed doctrine be carried to its logical conclusion, would be ruinous, and the farmers in the end would suffer incalculable harm."

In 1917 the state legislature dealt with the situation and passed the act above referred to, comprehensively regulating fertilizers. Among other provisions to prevent deception and fraud, it requires that before sale there shall be attached to each package a brand name, which is required to be registered with the state department of agriculture, the weight, the name and address of the manufacturer and the guaranteed analysis, giving the percentage of valuable constituents,—phosphoric acid, nitrogen (or equivalent in ammonia) and potash. Change of a registered brand to a lower grade is forbidden. The use of the terms "high grade" and "standard" is regulated, and minimum percentages of valuable constituents are prescribed for each grade. Deleterious substances are prohibited. Fertilizers offered for sale or sold contrary to the provisions of the act are liable to be seized and condemned. Penalties are prescribed for violations of the act or of the rules and regulations of the department made to carry it into effect. Whenever the commissioner of agriculture shall be satisfied that any fertilizer is five per cent. below the guaranteed value in plant food, it is his

duty to require that twice the value of the deficiency shall be made good by the manufacturer to one who has purchased such fertilizer for his own use. If ten per cent. below, it is the duty of the commissioner to require three times the value of such deficiency to be paid to the consumer. If the deficiency is due to intention of the manufacturer to defraud, then there shall be collected from him double the amounts above stated. If the manufacturer resists payment, the commissioner is required to publish the analysis in an official bulletin and also in one or more newspapers. The department is required to have sufficient chemists and assistants and the necessary equipment to enable it promptly to make a report of the chemical analyses of all samples sent by purchasers or consumers. It is authorized to collect and analyze fertilizer offered for sale in the State. Samples for analysis are required to be taken from at least ten per cent. of the lot, but from not less than ten bags of any lot or brand. The drawing of samples is safeguarded by the act, and the department is authorized to make additional rules and regulations for taking and forwarding them to the department. No sample shall be taken after thirty days from the actual delivery to the consumer, except by the state inspector. It provides (§ 7) that in the trial of any case where the value or composition of any fertilizer is called in question, a certificate of the state chemist, setting forth the analysis made by him " of any sample of said fertilizer drawn under the provisions of this chapter . . . shall be *prima facie* proof that the fertilizer was of the value and constituency shown by said analysis. . . . *Provided further,* that no suit for damages from results of use of fertilizer may be brought except after chemical analysis showing deficiency of ingredients, unless it shall appear to the Department of Agriculture that the manufacturer of said fertilizer in question has, in the manufacture of other goods offered in this State during such season, employed such ingredients

as are outlawed by the provisions of this act, or unless it shall appear to the Department of Agriculture that the manufacturer of such fertilizer has offered for sale during that season any kind of dishonest or fraudulent goods. That nothing in this act shall impair the right of contract."

It is not contended that the provision making the certificate of the state chemist *prima facie* evidence is invalid.[2] The contention is that the act arbitrarily substitutes the determination of an executive department for a judicial inquiry, and has the effect of abolishing all remedies against manufacturers of fertilizer for damages caused by the use of inferior or deleterious fertilizer, and is therefore repugnant to the Fourteenth Amendment.

The act does not deprive purchasers of any right or cause of action. On the contrary, it gives additional rights and remedies to one who purchases for his own use fertilizer below the guaranteed value in plant food. The terms of the statute are not made exclusive. Under the act the parties were free to deal on other terms. *Fertilizer Works* v. *Aiken,* (1918) 175 N. C. 398, 402; *Fertilizing Co.* v. *Thomas,* (1921) 181 N. C. 274, 283. The ingredients of fertilizers can be ascertained definitely by chemical analysis. The department is required to provide chemists and equipment and to make and report analyses of all fertilizers sent in by purchasers or consumers. The requirement imposed is reasonable and seems well calculated to safeguard against uncertainty, conjecture and mistake. The analysis is not made conclusive. Other

[2] See *Pillow* v. *Roberts,* 13 How. 472, 476; *Marx* v. *Hanthorn,* 148 U. S. 172, 182; *Turpin* v. *Lemon,* 187 U. S. 51, 59; *Adams* v. *New York,* 192 U. S. 585, 599; *Minneapolis & St. Louis R. R. Co.* v. *Minnesota,* 193 U. S. 53, 63; *Mobile, J. & K. C. R. R. Co.* v. *Turnipseed,* 219 U. S. 35, 42; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 81; *Reitler* v. *Harris,* 223 U. S. 437, 441; *Luria* v. *United States,* 231 U. S. 9, 25; *Easterling Lumber Co.* v. *Pierce,* 235 U. S. 380; *Meeker & Co.* v. *Lehigh Valley R. R. Co.,* 236 U. S. 412, 430; *Hawkins* v. *Bleakly,* 243 U. S. 210, 213; *Hawes* v. *Georgia,* 258 U. S. 1, 4.

evidence may be introduced by either party. The determination of the department is not substituted for a trial in court.

The Fourteenth Amendment does not prevent a State from prescribing a reasonable and appropriate condition precedent to the bringing of a suit of a specified kind or class so long as the basis of distinction is real, and the condition imposed has reasonable relation to a legitimate object.` See *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150, 155; *Truax* v. *Corrigan,* 257 U. S. 312, 337. We think it plain that actions to recover damages to crops resulting from the use of fertilizers may reasonably be distinguished from other damage suits. Crops depend on the kind and condition of the soil, the vitality of seeds sown or plants set out, the cultivation and care given, the weather and many other things, as well as the kind and amount of the fertilizer applied. The amount or quality of the yield cannot be known in advance. When good results are not obtained, it is impossible to discover the causes and determine how much of the shortage, whether of quantity or kind, properly may be attributed to any particular thing. In such actions, peculiar difficulties attend the ascertainment of the constituent elements of the fertilizer used, and the determination whether it is inferior in quality or contains ingredients that are deleterious or harmful to plant growth. To attempt to establish the kind or quality of fertilizer applied to the land by an inspection of the crop growing thereon, or by the result of the season's planting and effort, is to indulge in speculation and conjecture. A State has power to provide for and require a more definite method of ascertaining the essential facts and a better basis upon which judicial determinations may be made.

The provision of the state law here under attack is not repugnant to the Fourteenth Amendment.

*Judgment affirmed.*