Callahau, J.
For some years prior to April 21, 1942, Julius Myer, the father of the plaintiffs, owned 50% of the capital stock of Myer 1890 Bottling Co., Inc. His sons, defendants Abraham Myer and Israel Myer, each owned and continue to own 25% of said stock. On April 21, 1942, Julius Myer conveyed his stock in Myer 1890 Bottling Co., Inc., to three other sons, the plaintiffs herein, as trustees, by an agreement creating an inter vivos trust, under which the trustees are to pay over to the settlor all dividends declared during his lifetime. Upon the death of Julius Myer the trust is to terminate and the stock is to go to the plaintiffs free of the trust.
On April 5, 1945, Julius Myer was declared an incompetent, and defendant Louis-J. Lefkowitz was appointed committee of his property.
This derivative stockholder’s action was commenced April 18, 1946. Plaintiffs complain of numerous transactions, some of which date back to 1933, whereby their father and- their two brothers are alleged to have caused Myer 1890 Bottling Co., Inc., of which they were officers and directors, to lose large sums of money by breach of their fiduciary duties. The stock of the corporate defendants, Abeisral Holding Corporation and 18-20 Broome Street Corporation, like that of the represented corporation, was owned by the individual defendants, and it is claimed, in effect, that said two corporations were used to siphon off assets of the represented corporation.
The defendant committee and the remaining defendants moved separately but upon identical grounds to dismiss various portions of the complaint. These motions were granted in part, but were denied as to two of the main grounds urged for dismissal, which we will discuss in the following order: (1) that the plaintiffs were without legal capacity to sue as to any transactions prior to April 21, 1942, and (2) that certain claims set forth in the complaint were barred by a three-year Statute of Limitations. Defendants appeal from such denial.
*470 All defendants moved to dismiss the complaint as to those transactions which are alleged to have occurred prior to April 21, 1942, the date upon which plaintiffs accepted their interest in the stock of the Myer 1890 Bottling Co., Inc. Defendants contend, in substance, that plaintiffs are without legal capacity to sue with respect to such transactions because of the requirements of section 61 of the General Corporation Law.
By chapter 667 of the Laws of 1944 (eff. April 9, 1944), a new sentence was added to section 61 of the General Corporation Law, reading as follows: “ In any action brought by a shareholder in the right of a foreign or domestic corporation it must be made to appear that the plaintiff was a stockholder at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law.”
From the facts recited, it appears that the plaintiffs, as trustees, acquired the stock of Julius Myer in the represented corporation after many of the activities complained of in the complaint had occurred, but before the 1944 amendment to section 61 of the General Corporation Law above referred to.
Special Term, in denying the motion to dismiss upon the ground of lack of legal capacity to sue, held that plaintiffs, as trustees, might complain of transactions occurring before they acquired their stock, on behalf of their father who owned stock of the represented corporation during the times referred to. Special Term further held that plaintiffs had acquired their stock by operation of law, and thus were within the exception found in section 61. We disagree with both of these conclusions.
To say that the plaintiffs are suing here as trustees to enforce rights held by their father is to ignore the realities of the situation presented in this lawsuit. The transactions complained of are all alleged to have been participated in by their father, or he is claimed to have been the recipient of moneys diverted. Under such circumstances the father could hardly have complained of any of these matters. The committee of his property is opposing the maintenance of this representative action, and is being sued as a defendant. One of the essential purposes of the action is to compel the committee to restore moneys to Myer 1890 Bottling Co., Inc. Recovery of any money by such corporation could bring no financial advantage to the estate of the incompetent, for quite patently it would have to pay to the corporation a sum equal to, or greater than, any return which might come to it by way of dividends based on any funds obtained as a result of this action. Clearly, therefore, this action is not one for the benefit of, or to enforce any rights *471 of, the father, but solely for whatever advantage it may bring to the remainder interests of plaintiffs.
The additional ground upon which Special Term held that section 61 is not applicable to the present case, to wit, that the plaintiffs acquired their stock “ by operation of law,” likewise seems to be without support in fact or in law.' Plaintiffs as trustees acquired title to their father’s stock, not by operation of law but by the affirmative act of their father who, in executing the trust agreement, made a voluntary gift to plaintiffs in trust, coupled with a remainder interest. The plaintiffs’ title came, therefore, by contract with their father, and not by the intervention of any court or legal forum, or under circumstances that might be considered a transfer by operation of law.
Finally the plaintiffs claim that it would impair rights guaranteed them by the Federal and New York State Constitutions to construe section 61, as amended, to apply to transfers made prior to the enactment of the statute or to causes of action which had already accrued. Among the constitutional provisions -which plaintiffs cite to us as being infringed upon are article I, sections 6 and 11 of the New York State Constitution; article I, section 10, Fifth and Fourteenth Amendments of the United States Constitution. We will discuss only those provisions relating to securing equal protection of the laws, and deprivation of property without due process of law.
Before discussing these constitutional questions, it might be well to consider whether the language of section 61 lends itself to the construction contended for by plaintiffs. We find that the section expressly provides that it is to apply to any action “ brought ” by a shareholder. In view of this explicit language there seems to be no basis for any construction excluding the present action, which was brought after the amendment took effect, from the requirements imposed by the section. Further, the statute clearly provides that in “ any ” action brought by a shareholder it must be made to appear that the plaintiff was a stockholder at the time of the activities complained of. Here again, in view of the broad and all inclusive language used, we find no room for construction excluding from the statute those who acquired their stock prior to the enactment of the law, or causes of action which had already accrued, as suggested by ■plaintiffs.
Plaintiffs rely largely on the decision of the Court of Appeals in Shielcrawt v. Moffett (294 N. Y. 180) to support their suggestion for construction limiting the section as aforesaid. We do not find that case controlling. There the principal question *472 presented was whether section 61-b of the General Corporation Law was applicable to actions pending at the time of its adoption. Section 61-b, which was enacted into law at the same time section 61 was amended, provided in substance, that in any action “ instituted or maintained ” in the right of a corporation by stockholders owning less than 5% of the outstanding shares the corporation might require security for costs. The Court of Appeals found that, considering the language used in section 61-b, it was doubtful whether the Legislature intended the section to be applied retroactively, and, therefore, following well-established rules of statutory construction, held that it must be given a prospective application. Although the question of the constitutionality of section 61-b was raised in the Shielcrawt case (supra), it was not passed upon by the Court of Appeals, in view of its determination that the statute had no application to that action which had been pending for several years before the passage of section 61-b.
Here we have no question as to whether section 61 is to be applied to a pending action, nor do we have any room for doubt as to the scope that was intended to be given to the application of the statute because of the use of language of doubtful meaning. Unless, therefore, we are to resort to judicial legislation, we may not avoid determining the question of constitutionality raised by the plaintiffs.
The right to equal protection of the laws is a constitutional protection against what is frequently referred to as “ class legislation. ’ ’ The essence of the right to equal protection of the laws is that all persons similarly situated be treated alike. (Frost v. Corporation Commission, 278 U. S. 515, 522; Atchison, Topeka &c. Railroad v. Matthews, 174 U. S. 96.) Classification may be made in the application of statutory regulation, but when made it must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed (Gulf, Colorado & Santa Fé R’y v. Ellis, 165 U. S. 150). As was stated in Jones v. Union Guano Co. (264 U. S. 171, 181): “ The Fourteenth Amendment does not prevent a State from prescribing a reasonable and appropriate condition precedent to the bringing of a suit of a specified' kind or class so long as the basis of distinction is real, and the condition imposed has reasonable relation to a legitimate ¡object.”
*473 Certainly the Legislature had the right to say that the ownership of stock at the time of the commission of any wrong by the directors or others with respect to corporate affairs had some reasonable relationship to the right of a stockholder to sue on behalf of the corporation. The likelihood of impairment of value of the shares of a subsequent stockholder is somewhat more remote than it would be as to the shares of one who held stock at the time of the wrong. Distribution of funds restored to the corporation as a result of the action might go by way of dividends to the one suffering the least actual injury. It was not unreasonable for the Legislature to determine that, in order to prevent litigious persons from buying stock for the purpose of bringing suit as to alleged past mismanagement, it would be proper to limit the right to sue derivatively to those who owned the stock at the time of the acts complained of. That there existed in this State an evil which required correction, growing out of stock purchases for the purpose of bringing derivative suits, may be ascertained by reading the memorandum issued by the Governor in approving chapters 667 and 668 of the Laws of 1944.
For many years before the passage of the amendment to section 61, the Federal courts had imposed by rule a similar requirement as to stock ownership in derivative actions (Federal Buies of Civil Procedure for United States District Courts, rule,23, subd. [b]; U. S. Code of 1940, tit. 28, p. 2623). The United States Supreme Court had insisted upon a rather rigid compliance with this rule (McQuillen v. National Cash Register Co., 112 F. 2d 877, and cases cited p. 882). These circumstances readily establish the reasonableness of the classification, and remove any basis for a claim of lack of equal protection of the laws.
Before passing upon plaintiffs’ contention that to construe section 61 so as to apply it to transfers made prior to the amendment of the section, or to claims that had accrued prior thereto, would deprive plaintiffs of property without due process of law, it may aid us to consider the nature of the rights involved.
A stockholder has no right to institute action in his own behalf, but only on behalf of the corporation. In fact, the sole primary right of the stockholder is to demand that the corporation sue. It is only in the event that such demand is not complied with that the stockholder has a secondary and contingent right to sue on behalf of the corporation. This right does not flow from any express provision of the contract evidenced by the stockholder’s certificates, but rests solely on the recognition of *474 the right by the common law. Although other jurisdictions have held otherwise, in this State, the right of the stockholder to sue derivatively has been held to include the right to complain of activities consummated before the acquisition of his stock (Pollitz v. Gould, 202 N. Y. 11).
The stockholder’s right of action which was affected by section 61 involved, therefore, no right to enforce a personal claim, but was derivative, contingent, rested entirely upon a rule of common law, and related, at least in part, to rights between stockholder and corporation. All right of action was not abolished by the amendment of section 61. The rights of the corporation or any stockholder who held stock at the time of any activity complained of remained unaffected. The amendment may result in limiting the number of stockholders who can initiate action where there have been transfers of shares between the time of any alleged wrongdoing and the commencement of a derivative suit. But this limitation does not necessarily effect any deprivation of due process or the impairment of vested property rights.
Although an essential right of action is, broadly speaking, a property right, there is no vested right in the continuation of any particular remedy afforded by statute or common law. So long as some substantial remedy remains to enforce contractual or property rights, the Legislature may regulate or abolish a particular remedy relating thereto (Oshkosh Waterworks Co. v. Oshkosh, 187 U. S. 437).
The right that the plaintiffs have to demand that the corporation act, and to sue in the name of and for the benefit of the corporation in the event that demand is refused, is a contingent right of action only. Insofar as it may be of benefit to the stockholder personally the, property right. is a remote and insubstantial one, at least in respect to wrongs committed before stock was acquired. Under these circumstances we do not deem the right is one that may demand protection against legislative regulation (In re Inland Dredging Corporation, 61 F. [2] 765, cert, denied sub nom. Castellano v. Globe Indem. Co., 288 U. S. 611). The right is not so intimate in its relation to any contract rights of the stockholders as to be within the obligation of contract and thus immune from change (Conley v. Barton, 260 U. S. 677). The situation might be different if the stockholder had a right of personal recovery against the officers and directors and was prevented from pursuing his ■remedies as a creditor as to some accrued claim. (See Coombes v. Getz, 285 U. S. 434; Addiss v. Selig, 264 N. Y. 274, 280.)
*475 Here the corporation was the creditor and its rights remained unabridged.
Having arrived at this conclusion as to the nature of the right, involved and the power of the Legislature to regulate it, it becomes unnecessary to decide whether the statute might be upheld under the police power, in view of the public interest sought to be served by it and the reasonableness of the step taken. (See Fearon v. Treanor, 272 N. Y. 268, 274.)
Having determined that section 61 is applicable to this action, and that it would not infringe on plaintiffs ’ constitutional rights to apply it to transactions occurring before the amendment, we find that all allegations contained in the complaint referring to activities occurring prior to April 21, 1942, the date when plaintiffs acquired this stock, should be dismissed as to all moving defendants.
We consider now the second branch of the motion wherein the individual defendants seek to bar all claims based upon alleged waste of corporate assets, upon the ground that these claims accrued more than three years before the commencement of the action, i. ei, prior to April 18, 1943. The individual defendants contend that these claims are barred by three-year Statutes of Limitation.
In view of our dismissal under the branch of the motion heretofore discussed of all allegations relating to transactions prior to April 21,1942, the second branch would relate solely to those transactions occurring between April 21, 1942, and April 18, 1943.
Since 1936, there has been in force in this State a three-year Statute of Limitations as to all actions for waste or injury to property. (Civ. Prac. Act, § 49, subd. 7; Corash v. Texas Co., 264 App. Div. 292.) By chapter 851 of the Laws of 1942, effective September 1, 1942, a new Statute of Limitations (Civ. Prac. Act, § 48, subd. 8) was adopted relating solely to actions against corporation officers and directors. Under this new section claims of waste or injury to property were barred three years after the occurrence of the transactions complained of, whether an accounting was sought or damages demanded with respect to such waste or injury (Gottfried v. Gottfried, 269 App. Div. 413). If, however, money or its equivalent has been received by the officers or directors, and the allegations of the complaint were sufficient to make defendants liable for moneys had and received, this court has held that a six-year Statute of Limitations would apply to such a claim (Gottfried v. Gottfried, supra). Furthermore, if a complaint alleges facts to show that the *476 gravamen of the action is to recover a judgment on the ground of actual fraud, a period of six years from the discovery of the fraud would be available under subdivision 5 of section 48 of the Civil Practice Act. (Brundige v. Bradley, 294 N. Y. 345.)
Applying the foregoing rules to the present casé, we find, first, that actual fraud is not the gravamen of the complaint insofar as it is attacked upon these motions; The claims are essentially for waste and diversion of assets. It would follow that as to any such activities occurring prior to April 18, 1943, not involving the eleménts of money had and received, plaintiffs’ claim would be barred by the three-year Statute of Limitations. As to transactions complained of occurring in the period between April 21, 1942, when plaintiffs acquired their stock, and the 1st day of September, 1942, when subdivision 8 of section 48 of the Civil Practice Act took effect, a longer period of' limitations might be applicable, at least as to any transactions not controlled by subdivision 7 of section 49 of the Civil Practice Act, relating to claims for waste or injury to property. For instance, if transactions had occurred during that period warranting equitable relief by way of accounting, section 2 of chapter 851 of the Laws of 1942 would make the period of limitation six years for it provided such a period of limitation as to accrued causes of action of this class, unless a shorter period of limitation remained, in which event such existing period was not to be enlarged.
Courts have dismissed portions of causes of action on motions addressed to the pleadings where allegations as to distinct transactions were readily separable. (Goldstein v. Tri-Continental Corp., 282 N. Y. 21; Gottfried v. Gottfried, supra.) Although the present complaint contains but one cause of action, the various acts complained of are set forth in separately designated paragraphs. In some instances, however, the paragraphs refer to more than one transaction.
We think that with respect to the following matters the allegations are severable, and may be disposed of upon the present motion,
Paragraph 30 of the complaint refers to two classes of alleged misconduct. It alleges, in substance, first, a failure of the individual defendants to account for wooden receptacles or “ cases ” mailed to customers and not returned, and second, a sale by such individual defendants of certain of these “ cases ” and a diversion to their own use of the proceeds. The activities complained of in the first classification would be barred by the three-year statute found in subdivision 8 of section 48, if they *477 occurred after September 1, 1942, and before April 18, 1943. If they occurred prior to September 1, 1942, they would be barred by subdivision 7 of section 49 of the Civil Practice Act, for it is clear that they allege no more than waste or injury to property for which the corporation would have an adequate legal remedy. As to the second classification in paragraph 30, to wit, the diversion of corporate funds, same would not be barred at least as to the recipients thereof until the expiration of the six-year period found in the statute applicable to claims for money had and received.
Paragraph 31 of the complaint alleges waste by the officers and directors in the nature of excessive purchases of materials and supplies for the corporation. It also alleges sales of certain products in excess of the sales recorded on the corporate books, and embezzlement of the proceeds of such sales. The claim of waste for excessive expenditures would be barred by the three-year statute. (Civ. Prac. Act, § 48, subd. 8; Civ. Prac. Act, § 49, subd. 7.) The claim of embezzlement would not be barred for reasons indicated as to the second classification found in paragraph 30.
Paragraph 33 of the complaint relates to the payment of excessive and unearned salaries. In addition it contains allegations as to the purpose of defendants in making such payments, claiming that it was pursuant to a conspiracy formed in connection therewith. Ordinarily, payment of excessive salary would amount merely to waste, at least as to those who did not receive the moneys, but giving a liberal construction to the particular allegations found in this paragraph we are not inclined to say at this time that the claim is not broad enough to state a cause of action for money had and received as to all those who participated in the diversion of the money. This question should be decided upon the proof adduced at the trial.
Paragraphs 48 to 50, inclusive, state no more than waste of corporate assets for excessive expenditures for corporate advertising. Clearly, any such transactions occurring before April 18, 1943, would be barred by a three-year statute.
Paragraph 52 of the complaint alleges merely a waste of corporate assets through the inauguration of a system of dating certain printed labels. Such matters would likewise be barred by the three-year Statute of Limitations.
The orders, so far as appealed from, should be modified by granting the motion to strike out all allegations of transactions prior to April 21, 1942, and those transactions prior to April 18, 1943, specified above, and as modified affirmed, each with $10 costs and disbursements to the respective appellants.
*478 Townley, Glennon and Peck, JJ., concur; Martin, P. J., concurs in result.
Orders, so far as appealed from, unanimously modified by granting the motion to strike out all allegations of transactions prior to April 21, 1942, and those transactions prior to April 18,1943, specified in the opinion, and as so modified affirmed, each with $10 costs and disbursements to the respective appellants. Settle orders on notice. [See post, pp. 823, 869.]