G. OBER & SONS COMPANY v. ALEX. KATZENSTEIN.

(Filed 20 November, 1912.)

1. **Foreign Corporations—Domesticating Act—Failure to File Charter—Contracts—Consideration.**

Failure of a foreign corporation to become domesticated by filing a copy of its charter with the Secretary of State does not invalidate an express or implied contract made with it.

2. **Foreign Corporations—Domesticating Act—Failure to File Charter—Action by Attorney-General—Forfeiture of Penalty.**

An action for the forfeiture provided in section 1194, Revisal, for the failure of a foreign corporation, doing business here, to file its charter with the Secretary of State, must be brought by the Attorney-General for the forfeiture.

3. **Contracts, Written—Parol Evidence—Vendor and Vendee—Delivery—Implication—Harmless Error.**

When a contract for the sale of goods is put in writing which does not express the entire agreement, the oral part may be proved by parol, when not a variance or contradiction of the writing; and the writing being silent as to the time of delivery, the law implies that it shall be in reasonable and apt time. In this case it is immaterial whether there was an additional parol contract to pay a larger commission on sales amounting to a specified quantity, as it was not contended that this quantity had been sold by the defendant.

4. Contracts—Vendor and Vendee—Fertilizer—Option of Cancellation—Measure of Damages.

In an action to recover the balance of the purchase price of tobacco fertilizer sold under a contract making it optional with the plaintiff to cancel the order, it is held, on defendant's counterclaim for damages for the failure of plaintiff to deliver the goods, that recovery could only be had for damages accrued up to the time of the plaintiff's notice that he would exercise his option—in this case, the cost of preparing the plant-bed and for the higher priced labor employed and held by the defendant in readiness, and the profits on fertilizer actually sold by him, as contemplated by the parties, caused by his inability to substitute others, owing to the late date of cancellation; and not for the loss of crop incident to the option exercised under the contract by the plaintiff.

APPEAL by plaintiff from *Cline, J.*, at February Term, 1911, of WARREN.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Tasker Polk and A. C. Zollicoffer for plaintiff.*
*J. H. Kerr and Charles J. Katzenstein for defendant.*

DEFENDANT'S APPEAL.

CLARK, C. J. This action was brought to recover a balance due for the purchase of fertilizers. Revisal, 1194, requires every foreign corporation (excepting railroad, banking, insurance, express, and telegraph companies), before being permitted to do business in this State, to domesticate by filing in the office of the Secretary of State a copy of its charter and complying with certain regulations, and imposes a penalty of $500 for failure to observe the terms of that section. The plaintiff demurred to section 12 of defendant's answer in which he pleaded that the plaintiff could not recover because it had not complied with the requirements of Revisal, 1194, and was doing business in this State illegally. The demurrer was properly sustained. For its failure to comply with the provisions of the statute the plaintiff company is liable to an action by the Attorney-General for the forfeiture provided by this section. But the statute does not invalidate either the express contract made between the plaintiff

and the defendant nor, indeed, the implied contract raised by the receipt of the goods of the former by the defendant. This point has been recently adjudicated. *Tobacco Co. v. Tobacco Co.,* 144 N. C., 352. If the State, in addition to the penalty, had desired to render invalid the contract and to deny a recovery thereon, it would have so enacted, as it has done in regard to gambling and other illegal contracts. Revisal, 1687, 1689.

It is true that though a contemporaneous parol agreement cannot be admitted to vary, alter, or contradict a written agreement, yet that when the contract is not entirely in writing the oral part can be proven by parol, subject to the above rule. In this case, the controversy whether there was a parol agreement with the agent that the goods should be shipped promptly is immaterial, for there was of course an implied understanding that they were to be shipped in reasonable and apt time. Nor is it material whether there was a parol contract to pay a larger commission if as much as 500 tons were sold by the defendant, for in fact that number of tons was not sold by him, and there is no claim in this action for the higher commission.

The court properly held that the defendant was not entitled to recover by way of counterclaim any damages that he might have sustained by reason of his inability to get fertilizers to plant his 11 acres of tobacco land. It is true that where a farmer contracts for the purchase of fertilizers and the vendor, though knowing that it is for the purchaser's crop, fails to deliver, and the vendee, because of the lateness of the season, is unable to procure it elsewhere in time, so that thereby the yield of his crop is lessened, he is entitled to recover damages thus sustained. *Herring v. Armwood,* 130 N. C., 177; *Spencer v. Hamilton,* 113 N. C., 49; Sutherland Damages, secs. 664, 667. On this point the plaintiff relies upon *Carson v. Bunting,* 154 N. C., 532, and *Fertilizer Works v. McLawhorn,* 158 N. C., 274; but in the first case the Court held that the purchaser could not recover damages for failure to receive the fertilizers because the purchaser "did not allege that he could not have bought other fertilizers to have made good the deficiency, but admitted in his evidence that he could have done so." In the latter case, the action was to recover, not for a shortage in the quantity, but

for defect in the quality, and the Court held that the best evidence of such defective quality could be found in the analysis which had been made for the purchaser at the time by the Agricultural Department, and not by comparison of the soils and crops of the adjacent lands; and that the purchaser having notice by such analysis then made, should have bought the deficient material, which he had time to do.

Notwithstanding the above principles of law, the defendant is not entitled to recover, because in his contract with the plaintiff he agreed that the plaintiff could at its option cancel the order if it saw fit. Therefore the defendant was entitled to recover only the damages he had sustained up to the time he had notice that the plaintiff declined to fill his order, to wit, for the cost of preparing the plant-bed and for the higher priced labor employed and held in readiness, and for these two items the defendant was awarded damages as will appear in the "plaintiff's appeal" in this case. Besides, it is reasonably clear that the defendant had time to have purchased fertilizers, though not of this brand, in time to proceed with his crop.

No error.

### PLAINTIFF'S APPEAL.

CLARK, C. J. The plaintiff appealed because the defendant was allowed to show in evidence that under his contract with the plaintiff he had sold to his customers 88 tons of fertilizers at a profit of $2.25 per ton, which the plaintiff had failed to ship; and also to show that he had prepared two plant-beds at a cost of $60, and was unable to use them for that purpose because of failure to receive the guano; and, thirdly, because the defendant was permitted to show that the higher priced labor which he had retained for use on the tobacco farm up to the time he had to discharge them on account of failure to receive his fertilizers had entailed the loss of $117.

As we have already stated in the defendant's appeal, the defendant was entitled to recover the last two items because this loss had already accrued at the time he received notice that the fertilizers would not be shipped. But the defendant could not recover for the loss of the increased crop he would have made,

because under the contract the plaintiff had the right to cancel any order. Had the plaintiff given notice sooner, the defendant's loss would have been less. The plaintiff was liable for the loss up to the time of the notice that he would exercise the option not to ship.

For the same reason, on the first item the defendant having already contracted to sell this particular brand of fertilizer as agent, at the profit named, when the plaintiff after having booked the order exercised the option not to ship, the defendant could not get that brand of fertilizer elsewhere, and there is no evidence that the parties to whom the defendant had contracted to sell would have taken any other brand. Besides, the presumption is that the other fertilizer companies already had agents to sell their fertilizers. If it were otherwise, the plaintiff could have shown these facts in mitigation of damages, but did not offer to do so.

No error.