IN THE MATTER OF: FORECLOSURE OF A DEED OF TRUST EXECUTED BY LOREN L. BRADBURN AND WIFE, LORIE C. BRADBURN DATED JANUARY 4, 2007, RECORDED AT DEED BOOK 1815, PAGE 1563

No. COA08-1263

(Filed 1 September 2009)

**Mortgages and Deeds of Trust— violation of licensing statute—debt voidable but not void—weighing of equities**

A trial court order declaring a Deed of Trust illegal and unenforceable due to the mortgage company's violation of the licensing statute was remanded where the court determined that the mortgage company had failed to prove the existence of a valid debt. The Note and Deed of Trust are subject to being declared unenforceable for public policy reasons, but the contract is not void as a matter of law. It is appropriate for the trial court on remand to consider that neither party has "clean hands" in this transaction.

Appeal by petitioner from orders entered 6 February 2008 and 19 March 2008 by Judge Kimberly Taylor in Iredell County Superior Court. Heard in the Court of Appeals 12 March 2009.

*Shumaker, Loop & Kendrick, LLP, by William H. Sturges and Frederick M. Thurman, Jr. for Paragon Mortgage Holdings, LLC, and Paragon Mortgage, Inc., petitioner-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Phillip K. Woods, for The Office of the Commissioner of Banks of North Carolina, Amicus Curiae.*

*Legal Aid of North Carolina, Inc., by Celia Pistolis and Suzanne Chester; North Carolina Justice Center, by Charlene McNulty; Land Loss Prevention Project, by Mary Henderson; and Pisgah Legal Services, by William John Whalen, Amicus Curiae.*

*Pope McMillan Kutteh Privette Edwards & Schieck, PA, by Martha N. Peed and Anthony S. Privette, for respondents-appellees.*

JACKSON, Judge.

Paragon Mortgage Holdings, LLC ("PMH") and Paragon Mortgage, Inc. ("PMI") (collectively "Paragon") appeal the trial court's order

declaring as illegal and unenforceable the Deed of Trust upon which they sought to foreclose. For the reasons stated below, we remand.

On or about 22 December 2006, PMI filed an application with the North Carolina Commissioner of Banks ("the COB") to act as a mortgage banker pursuant to section 53-243.05 of the Mortgage Lending Act ("MLA"). On 4 January 2007, Loren L. and Lorie C. Bradburn ("the Bradburns") executed a Balloon Adjustable Rate Note (the "Note") in the original sum of $383,500.00 payable to PMI. The Note was secured by a North Carolina Deed of Trust (the "Deed of Trust") also executed 4 January 2007, and recorded in the Iredell County Register of Deeds on 10 January 2007. On 9 January 2007, PMI assigned the Note and Deed of Trust to PMH. Also on 9 January 2007, PMH assigned the Note and Deed of Trust to a third mortgage company—CSE Mortgage LLC ("CSE"). These assignments were recorded eight months later on 20 September 2007. The Note and Deed of Trust were re-assigned to PMH on 15 November 2007, effective 11 July 2007. The re-assignment was recorded on 29 November 2007.

The Bradburns made their first payment on the Note, but failed to make any further payments. On 3 May 2007, PMI—having no legal interest in the Note and Deed of Trust, as it had assigned its interest to PMH on 9 January 2007—notified the Bradburns that they were in default. On 2 July 2007, PMH, through its attorney, notified the Bradburns, *inter alia,* that the principal and interest due on the Note had grown to $408,779.48. At that time, PMH had no legal interest in the Note and Deed of Trust, also having assigned its interest in both to CSE on 9 January 2007. Paragon, through a trustee pursuant to the Deed of Trust, began foreclosure proceedings on 30 July 2007, providing notice to the Bradburns on or about 31 July 2007. After foreclosure proceedings had begun, the COB issued a license to PMI on 13 August 2007, authorizing it to engage in the business of a mortgage broker or mortgage banker within the State of North Carolina.

The foreclosure proceeding was heard by the Iredell County Clerk of Superior Court on 19 November 2007. The Clerk found as fact that PMI was not licensed to act as a mortgage broker or mortgage banker at the time the Bradburns executed the Note and Deed of Trust. Accordingly, it concluded that PMI had failed to prove the existence of a valid debt because the Note was not enforceable. Paragon appealed to the Superior Court.

The trial court conducted a *de novo* hearing on 7 January 2008. In its 6 February 2008 order, the trial court found as fact that PMI was

not licensed to act as a mortgage broker or mortgage banker on 4 January 2007.[1] The trial court concluded as a matter of law that by acting as a mortgage banker with respect to the Note, PMI was in direct violation of North Carolina General Statutes, section 53-243.02. It further concluded that because of this violation, the Note and Deed of Trust were illegal and unenforceable; therefore, Paragon had failed to prove the existence of a valid debt. Paragon appeals.

Paragon argues that the trial court erred in concluding as a matter of law that there was no valid debt and that the Note and Deed of Trust were illegal and unenforceable. We agree.

When the trial court sits without a jury, "'the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' " *Luna v. Division of Soc. Servs.*, 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004) (quoting *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992)). Paragon does not argue that there was any error in the trial court's findings of fact. The trial court's conclusions of law are reviewable *de novo. Id.*

The Bradburns contend that contracts made in violation of the law are invalid and unenforceable, citing *Courtney v. Parker*, 173 N.C. 479, 92 S.E. 324 (1917):

It is well established that no recovery can be had on a contract forbidden by the positive law of the State, and the principle prevails as a general rule whether it is forbidden in express terms or by implication arising from the fact that the transaction in question has been made an indictable offense or subjected to the imposition of a penalty.

*Id.* at 480, 92 S.E. at 324 (citations omitted).

Paragon, however, contends that the controlling language from *Courtney* is not the portion cited by the Bradburns; rather, the controlling portion is:

[T]he imposition of a penalty, without more, will not always have the effect of avoiding the contract, but . . . when the agreement is not immoral or criminal in itself, the courts, on perusal of the entire statute, its language, purpose, etc., may determine whether it was the meaning and intent of the Legislature to restrict the

---

1. The order was subsequently amended on or about 18 March 2008 to correct the petitioner's legal name.

operation of the law to the penalty as expressed and specified therein or give it the further effect of avoiding the contract.

*Id.* at 481, 92 S.E. at 325. In *Courtney*, the Court cited *Ober v. Katzenstein*, 160 N.C. 439, 76 S.E. 476 (1912), as an "illustration of the position." *Id.* In *Ober*, the Court refused to void a contract for failure to comply with the statute requiring registration of a foreign corporation.

> For its failure to comply with the provisions of the statute the plaintiff company is liable to an action by the Attorney-General for the forfeiture provided by this section. But the statute does not invalidate either the express contract made between the plaintiff and the defendant nor, indeed, the implied contract raised by the receipt of the goods of the former by the defendant.

*Ober v. Katzenstein*, 160 N.C. 439, 440-41, 76 S.E. 476, 477 (1912). The Court continued: "If the State, in addition to the penalty, had desired to render invalid the contract and to deny a recovery thereon, it would have so enacted, as it has done in regard to gambling and other illegal contracts." *Id.* at 441, 76 S.E. at 477.

Here, the MLA does not statutorily invalidate a contract executed in violation of its licensing provisions. However, Paragon directs our attention to the Consumer Financing Act ("CFA")—also found in Chapter 53—which does. North Carolina General Statutes, section 53-166 provides that any "contract of loan, the making or collecting of which violates any provision of this Article . . . is void[.]" N.C. Gen. Stat. § 53-166(d) (2007). The CFA was enacted in 1961. The MLA was enacted forty years later in 2001. Based upon our reading of the CFA, it is clear that had the General Assembly intended to impose the same penalty it did in the CFA, it could have included language in the MLA leading to the same result, that is, a contract that was void *ab initio* in the face of a violation of the statute.

Instead, the MLA provides the limited remedy that the COB "may require a licensee to pay to a borrower or other individual any amounts received by the licensee or its employees in violation of Chapter 24 of the General Statutes." N.C. Gen. Stat. 53-243.12 (j) (2007). No provision for a remedy in a situation such as the one we confront in the instant case is provided, as usury—the subject of Chapter 24—is not the issue before us. However, we note that the General Assembly recently amended the MLA to add the following subsection to the section concerning disciplinary authority—effective 1 January 2009:

**IN RE FORECLOSURE OF BRADBURN**

[199 N.C. App. 549 (2009)]

> In the event the Commissioner shall have evidence that a material violation of law has occurred in the origination or servicing of a loan then being foreclosed or then delinquent and in threat of foreclosure, and that the putative violation would be sufficient in law or equity to base a claim or affirmative defense which would affect the validity or enforceability of the underlying contract or the right to foreclose, then the Commissioner may notify the Clerk of Superior Court, and the Clerk shall suspend foreclosure proceedings on the mortgage for 60 days from the date of the notice. In the event that the Commissioner notifies the Clerk, the Commissioner shall also notify the servicer, if known, and provide an opportunity to cure the violation or provide information to the Commissioner to rebut the evidence of the suspected violation. If the violation is cured or the information satisfies the Commissioner that no material violation has occurred, the Commissioner shall notify the Clerk so that the foreclosure proceeding may be resumed.

2008 N.C. Sess. Laws 228, sec. 9. Even with recent extraordinary concerns about predatory lending and the "mortgage crisis," the General Assembly has not chosen to impose the severe penalty it put in place in the CFA—that of nullifying a contract.

As *Ober* instructs, we are constrained to understand that had the legislature desired to impose the onerous penalty of voiding the contract—as it has in the CFA—it would have enacted legislation to that effect. Therefore, our reading of *Courtney* leads us to conclude that a contract made in violation of the MLA is not void *ab initio*.

However, we also are mindful of *Courtney's* directive "that no recovery can be had on a contract forbidden by the positive law of the State[.]" *Courtney*, 173 N.C. at 480, 92 S.E. at 324. We note that at the time the transaction at issue took place, entering into a mortgage transaction without a valid license from the COB constituted a Class I felony. *See* N.C. Gen. Stat. § 53-243.14 (2007).[2] Therefore, "on perusal of the entire statute, its language, purpose, etc.," *Courtney*, 173 N.C. at 481, 92 S.E. at 325, we review on what basis the trial court may determine whether the transaction here ought to be enforced.

Although there is no mandate in the MLA, the following section included in the same bill is instructive:

---

2. The criminal penalty has since been revised to be a Class 3 misdemeanor. *See* 2008 N.C. Sess. Laws 228, sec. 11.

> The Legislative Research Commission may study the implementation and enforcement of this act, and the Act to Prohibit Predatory Lending enacted in the 1999 Session of the General Assembly, (S.L. 1999-332), to determine whether they have successfully reduced predatory lending practices and whether further reforms may be necessary or appropriate.

2001 N.C. Sess. Laws 393, sec. 8. This section is a clear expression of the General Assembly's continuing concern regarding predatory lending practices, which it first addressed in 1999 in adopting "a predatory lending law to limit abusive practices in home mortgage lending." *In re Tetterton*, 379 B.R. 595, 598 (E.D.N.C. 2007); N.C. Gen. Stat. § 24-1 *et seq.* Like the CFA, Chapter 24 dealing with usurious interest rates provides an explicit remedy for violations of the Act. Specifically, section 24-2 provides for either forfeiture of the interest paid on the note, or twice the amount of interest paid, depending on the egregiousness of the circumstances surrounding the case. N.C. Gen. Stat. § 24-2 (2007).[3]

Initially, "the taint of usury made the contract void both as to principal and interest, into whosoever hands it might come, and so likewise any appearance, shift or device whereupon or whereby an illegal rate of interest was received or taken was declared to be void." *Moore v. Woodard*, 83 N.C. 531, 532-33 (1880). The legislature amended the law to its current policy of interest forfeiture in 1877. 1876-77 N.C. Sess. Laws 91, sec. 3. As noted in *Moore*, over a century ago, "it is the duty of the courts so to expound and apply the law as to carry out the legislative intent." *Moore*, 83 N.C. at 533. Where, as here, we have a usury statute that allows only the forfeiture of interest and a consumer financing act that allows voiding the entire contract, but a mortgage lending act with no specific remedy for an aggrieved borrower, our task is profoundly difficult.

Based upon the foregoing, we believe that *Courtney* dictates that the contract is not void as a matter of law; however, the transaction may yet be avoided. *See Courtney*, 173 N.C. at 480, 92 S.E. at 324 ("In reference to an avoidance of a contract by reason of an implied prohibition, it is the rule very generally enforced that recovery is denied to the offending party when the transaction in question is in violation of a statute establishing a general police regulation to 'safeguard the public health or morals or to protect the general public from fraud or

---

3. In appropriate circumstances the aggrieved party may be able to elect a remedy pursuant to the Unfair and Deceptive Trade Practices Act.

imposition.' "). Because the trial court determined that Paragon "failed to prove by a preponderance of the evidence the existence of a valid debt as required by N.C.G.S. 45-21.16," we must remand to the trial court for further consideration in light of this opinion. On remand, it is appropriate for the trial court to consider that neither party has "clean hands" in this transaction.

Here, PMI was aware of the licensing requirements, having applied for a license on or about 22 December 2006. Notwithstanding the fact that PMI knew that it was required to have a license, and that it did not have a license, PMI acted as a mortgage broker or mortgage banker in violation of section 53-243.02 when it entered into the Note and Deed of Trust with the Bradburns on 4 January 2007—seven business days after applying for a license.

The Note contained the following terms, *inter alia*: (1) an initial interest rate of 10.99 percent—yielding an initial monthly payment of $3512.22; (2) interest-only payments for the first ten years, beginning 1 March 2007; (3) a balloon payment of the outstanding principal and any unpaid interest or other charges on 1 February 2017; (4) a variable interest rate which could change *monthly* beginning 1 September 2007; (5) a variable interest rate which could reach as high as eighteen percent but no lower than 10.99 percent; (6) a late payment fee of five percent of the overdue payment—yielding an initial penalty of $175.61; and (7) a default interest rate of eighteen percent.

Although it is not impermissible for a mortgagee to assign a note and deed of trust shortly after their creation, the assignments here could raise questions. The Note and Deed of Trust were assigned on 9 January 2007, one day prior to their recordation. These assignments were not recorded until 20 September 2007, after foreclosure proceedings had been initiated. The re-assignment to PMH was not executed until 15 November 2007, conveniently stating that it was effective 11 July 2007, prior to the commencement of foreclosure proceedings. This re-assignment was recorded 29 November 2007, *after* the clerk heard the matter and *after* she filed her order denying the foreclosure. The clerk found as fact that PMI was the holder of the Note and Deed of Trust. According to the *record* at the time the clerk heard the foreclosure proceeding, PMI was not the holder of the Note and Deed of Trust; CSE was. It does not appear as though the clerk was made aware of the various re-assignments in this matter.

We further note that on 3 May 2007 when PMI contacted the Bradburns with respect to the outstanding debt, and on 2 July 2007

when PMH contacted the Bradburns with respect to the default, neither PMI nor PMH held the Note and Deed of Trust; CSE did. Both had assigned their interests in the Note and Deed of Trust on 9 January 2007. Nonetheless, it appears that PMI and PMH continued to treat the Note and Deed of Trust as though their interest in them continued unabated.

Nonetheless, the terms of the Note and Deed of Trust permitted the holder to accelerate and declare as immediately due and payable in full the entire balance of the loan, upon the Bradburns' failure to make timely payments. Although such a term is common, in this case the first payment was not due until 1 March 2007. That payment was made. The Bradburns did not make their 1 April 2007 payment. PMI notified the Bradburns of their default on 3 May 2007, at which time a ten-day grace period applied to the 1 May 2007 payment. Again, we note that this notification was not sent by CSE—the holder of the Note and Deed of Trust. Paragon immediately began the foreclosure process. Again, we note the legislature's apparent intent to curb predatory lending. *See* 2001 N.C. Sess. Laws 393, sec. 8.

We recognize that the Bradburns were not innocent in this matter. They entered into a loan, the terms of which we presume they were made aware. They made only one payment.

Because Paragon violated the licensing statute, the Note and Deed of Trust it sought to foreclose is subject to being declared unenforceable for public policy reasons. However, it is the province of the trial court, not the appellate court, to weigh the evidence and decide the equities. Therefore, we remand to the trial court to determine whether the Note and Deed of Trust are unenforceable under the facts and circumstances of this case.

REMAND.

Judges STEPHENS and STROUD concur.