An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1034

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

TIMBER INTEGRATED INVESTMENTS,
LLC, A North Carolina limited
liability company and MOUNTAIN
WORKS ENTERPRISES, LLC, a North
Carolina limited liability
company,
      Plaintiffs,

   v.                           Haywood County
                                   No. 06 CVS 905

LARRY WELCH, JOAN MISHKIN, RONALD
MISHKIN and THE BALSAM GROUP, LLC,
      Defendants.


Appeal by defendants Joan Mishkin and Ronald Mishkin from orders entered 29 April 2013 and 31 May 2013, and judgment entered 9 May 2013 by Judge J. Thomas Davis in Haywood County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *Jeffrey W. Norris & Associates, PLLC, by Jeffrey W. Norris, for plaintiffs-appellees.*

> *McGuire, Wood & Bissette, P.A., by Joseph P. McGuire, for defendants-appellants Joan Mishkin and Ronald Mishkin.*


GEER, Judge.


Defendants Joan Mishkin and Ronald Mishkin appeal from a judgment allowing plaintiffs to pierce the corporate veil of

Balsam Group, LLC and imposing joint and several liability on the individual defendants for all sums owed by Balsam for its unfair and deceptive practices as a result of a previous judgment.[1] On appeal, the Mishkin defendants contend that the trial court erred in denying their motion to enforce a settlement agreement entered into by all the parties, including Balsam. The trial court denied their motion, concluding that the parties never entered a valid settlement agreement and, furthermore, that defendants were estopped from raising the settlement issue.

We hold that the undisputed evidence establishes that the parties entered an enforceable settlement agreement. The trial court, therefore, erred in concluding otherwise. With respect to the trial court's conclusion regarding estoppel, the trial court's findings of fact do not support the application of any estoppel doctrine recognized as part of North Carolina's common law. Consequently, the trial court's denial of defendants' motion to enforce the settlement agreement is not supported by either basis relied upon in the trial court's order, and we, therefore, reverse the order.

Plaintiffs, however, have argued on appeal that the order may be supported by an alternative basis in law. Although

_____

[1]Defendant Larry Welch is not a party to this appeal.

plaintiffs also argued at the trial level that defendants' motion should be denied based on the doctrine of laches, the trial court did not address that argument. Our review of the record reveals evidence from which the trial court should determine whether defendants are precluded from seeking enforcement of the settlement agreement based on laches. Because it is within the province of the trial court to weigh the equities of the case under the doctrine of laches, we remand for the trial court to address whether enforcement of the settlement agreement should be denied based on laches.

## Facts

This dispute arose out of the sale by defendants to plaintiffs of a tract of environmentally-contaminated land. On 27 July 2006, plaintiffs filed an action alleging fraud and unfair or deceptive practices and seeking to pierce the corporate veil of defendant Balsam and hold defendants Welch and the Mishkins individually liable. Defendants, including the individual defendants, denied the material allegations of the complaint, asserted multiple affirmative defenses, and sought attorneys' fees and costs. Defendant Welch also asserted a counterclaim for breach of a promissory note in the amount of $100,000.00 plus interest. The underlying facts of the case are

set forth in more detail in *Timber Integrated Invs., LLC v. Welch*, ___ N.C. App. ___, 737 S.E.2d 809 (2013).

On 29 October 2010, the trial court entered an order granting summary judgment to the individual defendants and denying summary judgment as to defendant Balsam. Plaintiffs filed a notice of appeal from this interlocutory order. Subsequently, plaintiffs' counsel reached out to defendants' counsel in an attempt to settle the litigation. Plaintiffs offered to withdraw their appeal and dismiss their lawsuit as to all defendants if defendant Welch would dismiss his counterclaim. Plaintiffs indicated that their purpose in attempting to reach a settlement was to avoid the time and expense associated with pursuing the appeal.

After plaintiffs' counsel confirmed that the dismissals would be with prejudice, defendants' counsel asked plaintiffs' counsel to prepare the necessary documentation for his clients to consider. On 9 March 2011, plaintiffs' counsel sent defendants' counsel a proposed Joint Dismissal with Prejudice and a Mutual Release and Settlement Agreement.

The following day, on 10 March 2011, plaintiffs' counsel sent a fax, following up on the 9 March 2011 letter and a subsequent phone call, in which counsel stated that "[i]t appears that we are in agreement and that you are simply waiting

on the documents to be returned from your clients." Plaintiffs' counsel asked that "in the event that your clients are delayed in getting the papers back to you, would you at a minimum give me the signed Dismissal for filing with the Court as your clients' signatures are not necessary for that document?" The Joint Dismissal with Prejudice was signed by both attorneys that day. On 22 March 2011, defendants returned the Mutual Release and Settlement Agreement, which defendants had signed.

Thereafter, on 1 April 2011, plaintiffs' counsel sent defendants' counsel a letter stating that after receiving the signed settlement agreement, plaintiffs "have taken more time to consider the proposed settlement" and "have reconsidered their previous position and wish to continue the appeal." Therefore, the letter stated, "we will not be filing the dismissal, they are not going to execute the Settlement Agreement, and we will proceed with the appeal . . . ."

As represented, plaintiffs did not file the voluntary dismissal and proceeded with their appeal. That appeal was dismissed as interlocutory on 6 December 2011. *Timber Integrated Invs., LLC v. Welch*, 217 N.C. App. 402, 720 S.E.2d 29, 2011 WL 6047094, 2011 N.C. App. LEXIS 2523 (2011) (unpublished). A bench trial was then held as to plaintiffs' claims against defendant Balsam on 23 January 2012. The trial

court concluded that Balsam "'committed fraud[,] . . . violated the Unfair and Deceptive Trade Practices statute[,] . . . [and] made negligent misrepresentations.'" *Timber*, ___ N.C. App. at ___, 737 S.E.2d at 814. The trial court entered judgment against Balsam on 22 February 2012 in the amount of $5,442,785.12, which was trebled to $16,328,355.36.

Plaintiffs appealed the 2012 judgment "'to the extent that the individual defendants Larry Welch, Joan Mishkin, and Ronald Mishkin were not subject to the judgment because of the [2010 trial court order] granting summary judgment in [Defendants'] favor prior to the trial.'" *Id.* at ___, 737 S.E.2d at 814. On 19 February 2013, this Court reversed summary judgment for the individual defendants and remanded for a trial on the issue of Balsam's status as a legitimate limited liability company and whether the individual defendants could be held individually liable. *Id.* at ___, 737 S.E.2d at 818.

On 20 March 2013, defendants filed a motion to enforce the settlement agreement. The motion asked for specific performance, dismissal of all claims against the individual defendants with prejudice pursuant to Rule 41 of the Rules of Civil Procedure, sanctions against plaintiffs, and attorneys' fees. On 29 April 2013, the trial court entered an order denying defendants' motion, concluding that "a complete

settlement was never rendered between the parties and completed and that the plaintiffs had the right to withdraw [their] offer. Furthermore, the defendants are estopped from raising the settlement issue at this point in light of the continued litigation and trial of this matter and the resulting opinion of the Court of Appeals."

A jury subsequently found that each of the individual defendants controlled Balsam with regard to the acts or omissions that damaged the plaintiffs. Based on the jury's verdict, the trial court entered judgment against the individual defendants jointly and severally for all sums set forth in the 22 February 2012 judgment against Balsam.

On 14 May 2013, defendants filed a Motion for Judgment Notwithstanding the Verdict and Motion for New Trial, which the trial court denied in an order filed 31 May 2013. On 27 June 2013, defendants Joan and Ronald Mishkin filed a notice of appeal of the order denying their motion to enforce the settlement agreement, the order denying their motion for directed verdict, the final judgment, and the order denying their motion for judgment notwithstanding the verdict and motion for new trial.

## Discussion

On appeal, defendants have chosen only to challenge the trial court's denial of their motion to enforce the settlement agreement, arguing that it was error for the trial court to conclude (1) that a settlement was never reached between the parties and (2) that defendants were estopped from raising the settlement issue. Generally, "a settlement agreement may be enforced by filing a new action or by filing a motion in the cause, even if 'the parties and their settlement agreement [are] still before the trial court.'" *Currituck Assocs.-Residential P'Ship v. Hollowell*, 166 N.C. App. 17, 24, 601 S.E.2d 256, 261 (2004) (quoting *State ex rel. Howes v. Ormond Oil & Gas Co.*, 128 N.C. App. 130, 137, 493 S.E.2d 793, 797 (1997)), *aff'd*, 360 N.C. 160, 622 S.E.2d 493 (2005). "'A motion to enforce a settlement agreement is treated as a motion for summary judgment' for purposes of appellate review." *Williams v. Habul*, ___ N.C. App. ___, ___, 724 S.E.2d 104, 109 (2012) (quoting *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009)).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. Rule

56(c). "The moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law." *Hardin*, 199 N.C. App. at 695, 682 S.E.2d at 733.

A.   Formation of an Enforceable Settlement Agreement

"A settlement agreement is a contract governed by the rules of contract interpretation and enforcement." *Williams*, ___ N.C. App. at ___, 724 S.E.2d at 110.

> "In the formation of a contract an offer and an acceptance are essential elements; they constitute the agreement of the parties. The offer must be communicated, must be complete, and must be accepted in its exact terms. Mutuality of agreement is indispensable; the parties must assent to the same thing in the same sense, *idem re et sensu*, and their minds must meet as to all the terms."

*Washington v. Traffic Markings, Inc.*, 182 N.C. App. 691, 697, 643 S.E.2d 44, 48 (2007) (quoting *Dodds v. St. Louis Union Trust Co.*, 205 N.C. 153, 156, 170 S.E. 652, 653 (1933)).

Here, there are no material issues of fact. The record establishes that plaintiffs' counsel sent defendants a proposed Joint Dismissal with Prejudice and Mutual Release and Settlement Agreement. In a follow-up letter referencing a subsequent phone call between counsel, plaintiffs' counsel noted that "[i]t appears that we are in agreement and that you are simply waiting on the documents to be returned from your clients" and requested

that defendants' counsel return "the signed Dismissal for filing with the Court as your clients' signatures are not necessary for that document[.]" Both attorneys signed the Joint Dismissal with Prejudice, and defendants signed the Mutual Release and Settlement agreement, without modification, and returned it to plaintiffs on 22 March 2011.

These undisputed facts show that a valid offer was made by plaintiffs and accepted by defendants. *See, e.g.*, *Goldman v. Parkland of Dallas, Inc.*, 277 N.C. 223, 226, 227, 176 S.E.2d 784, 787 (1970) (where defendant mailed document that "constituted an offer," the "final act necessary to make it a binding agreement was its acceptance, which was done by the plaintiff by signing it"); *Currituck Assocs.*, 166 N.C. App. at 26-27, 601 S.E.2d at 263 (finding correspondence between parties' counsel containing settlement offers and counter-offers, followed by counsel's statement that "'I received your message and am pleased that we have reached an agreement'" constituted valid offer and acceptance creating enforceable settlement agreement).

The trial court's conclusion that "a complete settlement was never rendered between the parties and completed and that the plaintiffs had the right to withdraw that offer" was apparently based upon its findings that (1) the dismissal was

never filed, and (2) plaintiffs did not sign the memorandum of settlement. These findings, however, are not sufficient to establish that no enforceable settlement agreement was entered into between the parties.

In the analogous context of a mediation settlement agreement, this Court has explained:

> Although any agreement reached must be reduced to a signed writing, the failure of the parties to reduce their agreement to a signed writing does not preclude a finding that the parties indeed reached agreement at the mediated settlement conference. Indeed, it is well settled that parties may orally enter a binding agreement to settle a case. *See* 15A Am. Jur. 2d *Compromise and Settlement* § 10, at 782 (1976) ("[N]o particular form of agreement and no writing is ordinarily essential to a valid compromise."); *cf. Manufacturing Co. v. Union*, 20 N.C. App. 544, 548, 202 S.E.2d 309, 312 (noting that parties may orally consent to a consent judgment), *cert. denied*, 285 N.C. 234, 204 S.E.2d 24 (1974); *Nickels v. Nickels*, 51 N.C. App. 690, 693–94, 277 S.E.2d 577, 579 ("[S]ignatures of parties or their attorneys [on a consent judgment are] not necessary if consent is made to appear."), *disc. review denied*, 303 N.C. 545, 281 S.E.2d 392 (1981).

*Few v. Hammack Enters., Inc.*, 132 N.C. App. 291, 298-99, 511 S.E.2d 665, 671 (1999).

Because the undisputed facts show that defendants accepted plaintiffs' offer to settle by signing and returning the agreement prior to plaintiffs' withdrawal of their offer, the

parties entered into an enforceable settlement agreement. Plaintiffs, therefore, did not have the right to withdraw their offer.

In arguing that the trial court properly concluded that they withdrew their settlement offer, plaintiffs point to two cases involving consent judgments: *Lee v. Rhodes*, 227 N.C. 240, 41 S.E.2d 747 (1947), and *Freedle v. Moorefield*, 17 N.C. App. 331, 194 S.E.2d 156 (1973). The Supreme Court in *Lee* held that the trial court did not have the authority to enter a consent judgment "after one of the parties repudiated the agreement and had withdrawn his consent thereto." 227 N.C. at 242, 41 S.E.2d at 749. *Freedle*, applying *Lee*, vacated a consent judgment entered by the trial court when, after reaching a settlement agreement, one of the parties repudiated his acceptance of the offer to settle. 17 N.C. App. at 332, 194 S.E.2d at 157.

The requirements for entry of a consent judgment are, however, distinct from the requirements for the formation of a valid and enforceable settlement agreement. In *State ex rel. Howes*, 128 N.C. App. at 132, 493 S.E.2d at 794, the parties entered a settlement agreement that provided, among other things, that the parties would enter into a consent judgment. After the proposed consent judgment was prepared, one of the parties refused to sign it. *Id.* The trial court found that the

proposed consent judgment "'fully and fairly reflect[ed] the agreed-upon terms of the Settlement'" and ordered the non-consenting party to comply with its terms. *Id.* at 133, 493 S.E.2d at 795.

On appeal, this Court vacated the consent judgment, noting that "a party may withdraw his consent from a consent judgment at any time before a trial court sanctions the parties' agreement and promulgates it as a judgment." *Id.* at 136, 493 S.E.2d at 796. Nevertheless, this Court held that, on remand, "the trial court may consider whether the State is still entitled to 'specific performance of the Settlement by entry of Judgment implementing the terms of the Settlement.'" *Id.*

Thus, withdrawal of consent prior to entry of a consent judgment has no effect on the formation of a valid settlement agreement. The cases cited by plaintiff are, therefore, inapposite. Accordingly, we hold that the trial court erred to the extent that it based its decision on a conclusion that plaintiffs withdrew their settlement offer.

B.  Estoppel

Nevertheless, the trial court also concluded that the defendants were "estopped from raising the settlement issue at this point in light of the continued litigation and trial of this matter and the resulting opinion of the Court of Appeals."

The trial court did not specify which doctrine of estoppel it applied.

Our Supreme Court has explained:

> Broadly speaking, "estoppel is a bar which precludes a person from denying or asserting anything to the contrary of that which has, in contemplation of law, been established as the truth." 28 Am. Jur. 2d *Estoppel and Waiver* § 1 (2000). As we noted over 150 years ago, it is a principle which "lies at the foundation of all fair dealing between [persons], and without which, it would be impossible to administer law as a system." *Armfield v. Moore*, 44 N.C. 157, 161 (1852). "Estoppel" is not a single coherent doctrine, but a complex body of interrelated rules, including estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel, promissory estoppel, and judicial estoppel. 28 Am. Jur. 2d *Estoppel and Waiver* § 2 (2000).

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 13, 591 S.E.2d 870, 879 (2004).

Defendants address only equitable estoppel on appeal, arguing that the trial court's findings of fact are insufficient to establish the essential elements of equitable estoppel. We agree. "The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *State ex rel. Easley v. Rich Food Servs., Inc.*, 139 N.C. App.

691, 703, 535 S.E.2d 84, 92 (2000).  Additionally, "[t]he party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice." *Id.*

The trial court's sole finding regarding its application of estoppel was that "defendants continued to participate with the litigation, continued to participate in the Court of Appeals, and the Court of Appeals has now reversed the summary judgment motion in favor of the individual defendants, and also, a trial has taken place in regard to Balsam Group, LLC."  The trial court did not make any findings specifically addressing the elements of equitable estoppel, and we cannot infer the necessary findings of fact from the findings actually made.

Therefore, the trial court could not have based its application of estoppel on the doctrine of equitable estoppel.  In addition, neither party argues -- and the trial court's limited findings do not suggest -- that the trial court was applying any alternative estoppel doctrine.  We, therefore, hold that the trial court's findings are insufficient to support its determination that defendants should be estopped from enforcing the settlement agreement.

C.    Laches

Plaintiffs, however, point to the doctrine of laches and appear to argue that the trial court, when it referenced estoppel, was actually concluding that laches worked to estop defendants from enforcing the settlement agreement. This Court has recognized that "[t]he defenses of estoppel and laches are both equitable in nature and there is often *substantial* overlap in their application." *Abernethy v. Town of Boone Bd. of Adjustment*, 109 N.C. App. 459, 463, 427 S.E.2d 875, 877 (1993) (emphasis added).

Nevertheless, when our Supreme Court provided a comprehensive review of the "broader spectrum of estoppel and preclusion doctrines customarily used" in North Carolina common law, it did not mention the doctrine of laches. *Whitacre P'Ship*, 358 N.C. at 13, 591 S.E.2d at 879. Moreover, as the United States Supreme Court recently explained:

> The test for estoppel is more exacting than the test for laches, and the two defenses are differently oriented. The gravamen of estoppel, a defense long recognized as available in actions at law, is misleading and consequent loss. Delay may be involved, but is not an element of the defense. For laches, timeliness is the essential element.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, ___ U.S. ___, ___, 188 L. E. 2d. 979, 997, 134 S. Ct. 1962, 1977 (2014) (internal citations omitted).

Because estoppel and laches constitute separate and distinct equitable defenses, we decline to assume that the trial court, without mentioning the doctrine of laches, applied that doctrine in reaching its conclusion that defendant was estopped from seeking enforcement of the settlement agreement. Plaintiffs, however, alternatively assert, pursuant to Rule 28(c) of the Rules of Appellate Procedure, that the trial court's failure to address laches "deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken."

Plaintiffs specifically argued laches to the trial court in their brief in opposition to defendants' motion to enforce the settlement agreement. Defendants, however, contend that because plaintiffs did not raise the issue of laches in their proposed issues on appeal as provided in Rule 10(c) of the Rules of Appellate Procedure, plaintiffs have failed to preserve the issue for appellate review. We disagree.

Rule 10(c) provides:

> Without taking an appeal, an appellee may list proposed issues on appeal in the record on appeal based on any action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken. *An appellee's list of proposed issues on appeal shall not preclude an*

> *appellee from presenting arguments on other issues in its brief.*

(Emphasis added.)

Thus, although the better practice would be for an appellee to list alternative bases in law in the appellee's proposed issues on appeal, the plain language of Rule 10(c) does not limit the issues an appellee may argue in its brief to those issues listed in the record on appeal. Furthermore, Rule 28(c) expressly allows an appellee to set forth in its appellee brief an alternate basis in law to support an order. Because plaintiffs' brief argued the doctrine of laches and plaintiffs had also asserted laches in the trial court, plaintiffs' arguments regarding the applicability of laches are properly before us.

This Court has explained that

> 1) the doctrine [of laches] applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001).  The burden of proof is on the party asserting laches.  *Taylor v. City of Raleigh*, 290 N.C. 608, 622, 227 S.E.2d 576, 584 (1976).

We hold that there is evidence in the record from which the trial court should make findings to determine whether or not the doctrine of laches applies in this case.  It is well settled that "it is the province of the trial court, not the appellate court, to weigh the evidence and decide the equities."  *In re Bradburn*, 199 N.C. App. 549, 556, 681 S.E.2d 828, 833 (2009).  Consequently, because laches is an equitable defense, it is for the trial court -- and not this Court -- to decide in the first instance whether laches should be applied in this case to bar defendants from enforcing the settlement agreement.

We, therefore, reverse the trial court's order and remand to the trial court for consideration whether laches would prevent the enforcement of the settlement agreement.

Reversed and remanded.

Judges ROBERT C. HUNTER and McCULLOUGH concur.

Report per Rule 30(e).